UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
MICHAEL SPAGNUOLI, KELLIE SHEA, and
JOSEPH VESELAK, individually and on behalf
of all other persons similarly situated,

**MEMORANDUM OF
DECISION AND ORDER**
13-CV-4907 (ADS) (ARL)

Plaintiffs,

-against-

LOUIE'S SEAFOOD RESTAURANT, LLC,
and/or any other entities affiliated with,
controlling, or controlled by LOUIE'S
SEAFOOD RESTAURANT, LLC; MARTIN
PICCONE; and MICHAEL GUINNANE,

Defendants.
---------------------------------------------------------X

**APPEARANCES:**

**Leeds Brown Law PC**
*Attorneys for the Plaintiffs*
One Old Country Road, Suite 346
Carle Place, NY 11514
   By:  Jeffrey Kevin Brown, Esq.
        Brett R. Cohen, Esq.
        Michael Alexander Tompkins, Esq., Of Counsel

**The Scher Law Firm LLP**
*Attorneys for the Defendants*
One Old Country Road, Suite 385
Carle Place, NY 11514
   By:  Austin R. Graff, Esq., Of Counsel

**SPATT, District Judge**.

On September 3, 2013, the Plaintiffs Michael Spagnuoli ("Spagnuoli"), Kellie Shea

("Shea") and Joseph Veselak ("Veselak," and collectively, the "Plaintiffs"), individually and on

behalf of all other persons similarly situated, commenced this action, by filing a Complaint

against the Defendants Louie's Seafood Restaurant, LLC ("Louie's"), and/or other entities

affiliated with, controlling or controlled by Louie's; Martin Piccone ("Piccone"); and Michael

1

Guinnane ("Guinnane," and collectively, the "Defendants"). The Plaintiffs assert causes of action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 and 216(b); New York Labor Law ("NYLL") §§ 190 et seq., 663 and 650 et seq.; and 12 New York Codes, Rules and Regulations ("NYCRR") §§ 146-1.4 and 1.6. In this regard, the Plaintiffs seek to recover unpaid overtime compensation and spread of hours compensation allegedly owed to them by the Defendants.

Presently before the Court is the Defendants motion to disqualify the Plaintiffs' Counsel, Leeds Brown LLC ("Leeds Brown"), or in the alternative, to deny Leeds Brown class counsel status. For the reasons that follow, the motion is denied.

## I. BACKGROUND

### A. Underlying Facts

According to the Complaint, the Defendant Louie's is a domestic corporation organized and existing under the law of the State of New York. Louie's principal place of business is located in Port Washington, New York, and it is engaged in the restaurant business. Its gross yearly sales are alleged to be greater than $500,000. At all relevant times, the Defendants Picone and Guinnane were officers, directors, president, vice president and/or owners of Louie's or related entities.

The named Plaintiffs are all residents of New York and are all former employees of the Defendants. In this regard, the Plaintiff Spagnuoli worked for the Defendants as a waiter from August of 2010 to August of 2011; the Plaintiff Shea worked for the Defendants as a bartender from an unspecified month in 2003 to April of 2012; and the Plaintiff Veselak worked for the Defendants as a waiter from April of 2010 to December of 2011. The potential class members in this case are also former employees of the Defendants.

The Plaintiffs allege that the Defendants failed to pay their employees overtime wages, at the rate of one and one half times the regular rate of pay, for all hours worked in excess of forty hours in any given week. They further allege that the Defendants failed to pay spread of hours compensation of one additional hour at the regular hourly wage rate for days worked in excess of ten hours.

For example, according to the Plaintiffs, Spagnuoli worked six days per week, for approximately seventy to ninety-six hours per week, including between fifteen to sixteen hours per day. He was paid $4.60 to $5.00 per hour plus tips and alleges that he was only compensated for forty hours of work per week. He claims that he was not paid overtime at time and one-half his regular hourly wage for those hours over the forty hours that he worked, nor was he paid spread of **hours** compensation for the days that he worked more than ten hours.

Similarly, Shea and Veselak worked five to six days per week, ten to twelve hours a day, for a total of fifty to seventy hours per week. Their salaries were $5.00 per hour plus tips. According to the Plaintiffs, Shea and Veselak were not paid overtime at time and one-half their regular hourly wage for all the hours they worked over forty hours per week. In addition, they contend that they did not receive spread of hours compensation for those days they worked more than ten hours.

The Plaintiffs allege that the Defendants "willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and applicable New York State law by failing to maintain and complete timesheets or payroll records." (Compl., ¶ 54.) Moreover, they claim that "[t]he Named Plaintiffs and putative class were all subject to [the] Defendants' policies and willful practices of (1) failing to pay overtime wages, at the rate of one and one half times the

regular rate of pay, for all hours worked in excess of 40 hours in any given week; and (2) failing to pay spread of hours compensation." (Compl., ¶ 18.)

**B. The Mendez Action**

On June 27, 2012, Oscar Mendez ("Mendez"), individually and on behalf of all other persons similarly situated, commenced a class action lawsuit, Mendez v. Louie's Seafood Restaurant, LLC, et al., Case No. 12-CV-3202 (the "Mendez Action"), against the same Defendants that are named in the present action. Mendez was represented by Leeds Brown and, like the Plaintiffs here, brought claims pursuant to the FLSA, NYLL and NYCRR to recover unpaid overtime compensation and spread of hours compensation allegedly owed to him by the Defendants. The Mendez Action was assigned to United States District Judge Joanna Seybert and United States Magistrate Judge A. Kathleen Tomlinson.

Discovery was never formally conducted in the Mendez Action. On December 21, 2012, Mendez and the Defendants entered into a fully executed settlement agreement (the "Settlement Agreement"). In relevant part, the Settlement Agreement contained a "No Solicitation or Current Representation" provision, which stated as follows:

> [Mendez's] attorneys in this matter, Leeds Brown [ ], represent and warrant that neither the firm nor any attorneys affiliated with the firm (individually, together, or in conjunction with other attorneys) represent any other employee or former employee of the [Defendants] in connection with an employment-related issue against the [Defendants] or Releases.

(Graff Affirmation, Exh. B., pg. 4.) The Settlement Agreement also contained a "Confidentiality" provision.

On January 1, 2013, the Mendez parties filed the Settlement Agreement with the court and moved for settlement approval. On January 17, 2013, Judge Seybert denied the motion without prejudice. In this regard, Judge Seybert took issue with the Settlement Agreement's

4

inclusion of the Confidentiality provision, and directed the parties, within thirty days, to proceed in one of three ways: (1) the parties could file a revised Settlement Agreement and exclude the Confidentiality provision; (2) the parties could submit for <u>in camera</u> review a letter signed by both parties explaining why the court should approve the Settlement Agreement containing a Confidentiality provision; or (3) the parties could submit a letter indicating their intention to abandon their settlement and move forward with litigating the <u>Mendez</u> Action.

On February 7, 2013, the <u>Mendez</u> parties filed a letter, dated February 6, 2013, advising Judge Seybert that they agreed to file the Settlement Agreement publicly instead of under seal, but wished to include a Confidentiality provision so as to prohibit Mendez from discussing the settlement or encouraging others to come forward. By Order dated May 1, 2013, Judge Seybert denied the <u>Mendez</u> parties' joint request to approve the Settlement Agreement.

In this regard, Judge Seybert's May 1, 2013 Order raised the following issues: (1) the Settlement Agreement erroneously referred to the <u>Mendez</u> Action by the wrong case number; (2) even though the Settlement Agreement was filed on the public docket, the Confidentiality provision nevertheless contravened the legislative purpose of the FLSA; (3) the Court could not determine whether the settlement amount contained in the Settlement Agreement was fair and reasonable because neither Mendez nor the Defendants provided the Court with sufficient information to examine the credibility of the dispute. Therefore, Judge Seybert directed the <u>Mendez</u> parties, within thirty days of the date of the May 1, 2013 Order, to submit a revised Settlement Agreement for judicial approval, which had to include, at minimum (1) the correct case number; (2) the removal of the Confidentiality provision; and (3) additional information, such as affidavits or other documentary evidence, detailing as to why the proposed settlement amount was fair and reasonable. Judge Seybert advised that in the event the parties failed to

renew their request for judicial approval of the Settlement Agreement within the thirty-day period allotted, the case would be referred to Judge Tomlinson for discovery.

Following Judge Seybert's second rejection of the Settlement Agreement, on May 7, 2013, Shea filed her consent to become a party in the Mendez Action, which, a indicated above, was brought by Mendez as a class action. Shortly thereafter, on May 24, 2013, Spagnuoli and Veselak filed separately their consents to become parties in the Mendez Action.

On May 31, 2013, the Defendants submitted an affidavit by Picone explaining that the settlement amount was fair and reasonable. The Mendez parties failed to submit a revised Settlement Agreement nor did Mendez, as the named plaintiff in the case, submit any additional documentary evidence concerning whether the settlement amount was fair and reasonable. Accordingly, on June 26, 2013, Judge Seybert found that the Mendez parties were no longer interested in settlement and referred to Judge Tomlinson discovery, as well as any other non-dispositive pretrial matters.

Also on June 26, 2013, counsel for Mendez filed a letter advising Judge Seybert that there had been an error with filing the Settlement Agreement onto the Electronic Case Filing System and that the parties had intended to file the revised Settlement Agreement on May 31, 2013 along with the Picone affidavit. Mendez's attorney enclosed the revised Settlement Agreement with the June 26, 2013 letter. She asked Judge Seybert to excuse the administrative error and to accept the revised Settlement Agreement as if it had been filed on May 31, 2013. Of note, despite the fact that Shea, Spagnuoli and Veselak had opted-in to the Mendez Action, the revised Settlement Agreement still retained the "No Solicitation or Current Representation" provision as it appeared in the original Settlement Agreement.

A little more than one month later, on August 5, 2013, the Mendez parties filed their notice of consent to have Judge Tomlinson conduct all proceedings in the action. On August 9, 2013, Judge Seybert reassigned the case to Judge Tomlinson.

By stipulation dated August 2, 2013 and filed on August 14, 2013, Leeds Brown, on behalf of Shea, Spagnuoli, Vesalak and Jackson Weber ("Weber"), who is another class member in the action before this Court, and counsel for the Defendants in the Mendez Action agreed to toll the statute of limitations for any FLSA and NYLL claims brought by Shea, Spagnuoli, Veselak and Weber. Also on August 14, 2013, the Mendez parties appeared for a status conference before Judge Tomlinson and Judge Tomlinson held that the revised Settlement Agreement, with the changes ordered by Judge Seybert, was fair and reasonable. However, before granting final approval of the revised Settlement Agreement, Judge Tomlinson directed the Mendez parties to resolve the issue of the opt-in plaintiffs and to report back to her with a status update on or before August 26, 2013.

On August 15, 2013, Shea, Spagnuoli and Veselak each filed separate notices withdrawing their consents to become a party in the Mendez Action. Also on that date, August 15, 2013, Judge Tomlinson declined to "so order" the stipulation filed on August 14, 2013 because (1) the stipulation had no caption; and (2) the stipulation contained no case number. The next day, August 16, 2013, Judge Tomlinson found that the August 15, 2013 notices by Shea, Spagnuoli and Veselak were insufficient because they had not been individually and personally signed.

On August 20, 2013, Shea, Spagnuoli, Veselak, Weber and the Defendants filed a revised stipulation tolling the statute of limitations for any FLSA and NYLL claims brought by Shea, Spagnuoli, Veselak or Weber. Judge Tomlinson "so ordered" the revised stipulation on August

7

21, 2013. Also on August 21, 2013, Shea, Spagnuoli and Veselak separately filed revised notices indicating that they were withdrawing their consent to opt-in to the Mendez Action. In compliance with Judge Tomlinson's August 16, 2013 Order, each notice was individually and personally signed.

On August 22, 2013, Judge Tomlinson issued an Order of Settlement. In this regard, she noted that the three opt-in plaintiffs in the Mendez Action – that is, Shea, Spagnuoli and Veselak – had all withdrawn from the Mendez Action and would be participating as plaintiffs in a separate action, which is the case presently before the Court. Accordingly, Judge Tomlinson granted final approval of the revised Settlement Agreement and directed the Clerk of the Court to close the Mendez Action.

## C. Procedural History in the Pending Action

As stated above, this lawsuit was commenced on September 3, 2013, when the Plaintiffs filed a Complaint against the Defendants. One week later, on September 10, 2013, Spagnuoli, Shea, Veselak and Weber filed separate consents to join this FLSA collective action. Also on September 10, 2013, and prior to the Defendants appearing in the instant case, the Plaintiffs filed an unsigned copy of the August 2, 2013 stipulation that had been filed in the Mendez Action and which had been "so ordered" by Judge Tomlinson on August 15, 2013. The stipulation was "so ordered" by this Court on September 12, 2013. About one month later, on October 15, 2013, Rosemarie Gunning ("Gunning") opted-in to this action.

On December 16, 2013, the Defendants appeared in this case represented by different counsel than the counsel who represented them during the Mendez Action. On December 24, 2013, the Defendants answered the Complaint.

Thereafter, on January 27, 2014, the Plaintiffs moved to conditionally certify a FLSA collective action pursuant to 29 U.S.C. § 216(b). On January 30, 2014, the Defendants requested an extension of time to oppose the Plaintiffs' motion to conditionally certify a FLSA collective action and to make a cross-motion seeking an order from the Court denying Leeds Brown class counsel status in the event the Court granted conditional certification of the class.

On February 2, 2014, the Court respectfully referred the Plaintiffs' motion for conditional class certification and the Defendants' related letter application to United States Magistrate Judge Arlene R. Lindsay for a decision. In this regard, the Court explained that because the Plaintiffs' motion only involved a preliminary determination and was not dispositive, Judge Lindsay could exercise jurisdiction. As such, the Plaintiffs' motion for conditional certification is currently pending before Judge Lindsay.

On February 21, 2014, the Defendants filed their cross-motion. However, rather than seeking an order from the Court denying Leeds Brown class counsel status should the Court conditionally certify a class, the Defendants sought the disqualification of Leeds Brown as the Plaintiffs' attorneys in this action or, in the alternative, an order denying Leeds Brown class counsel status. On February 24, 2014, Judge Lindsay advised the Defendants that they had to redirect their motion to this Court in the first instance.

On February 26, 2014, the Defendants refiled their motion to this Court's attention, as instructed by Judge Lindsay. This is the motion presently before the Court. Of note, to date, the Plaintiffs have not moved to certify a class pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23 and only seek, at this time, to conditionally certify a collective action pursuant to 29 U.S.C. 216(b).

## II. DISCUSSION

### A. Legal Standard

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" Hempstead Video, Inc. v. Incorporated Village of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (quoting Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)). In exercising this power, the Court must "be solicitous of a client's right freely to choose his counsel – a right which of course must be balanced against the need to maintain the highest standards of the profession." Government of India v. Cook Industries, Inc., 569 F.2d 737, 739 (2d Cir. 1978); see also Hempstead Video, Inc., 409 F.3d at 132. In the Eastern District of New York, ethical standards are governed by the New York State Rules of Professional Conduct ("NYRPC"). See Local Civil Rule 1.3.

Whether or not disqualification is warranted is subject to the Court's discretion. Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990). However, given the "immediate adverse effect on the client by separating him from counsel of his choice, and that disqualification motions are often interposed for tactical reasons . . . [and] inevitably cause delay," Nyquist, 590 F.2d at 1246, "motions to disqualify are subject to a high burden of proof," Hickman v. Burlingont Bio-Medical Corp., 371 F. Supp. 2d 225, 229 (E.D.N.Y. 2005). See also Government of India, 569 F.2d at 739. Accordingly, "[u]nder the restrained approach adopted by the Second Circuit, relief will be granted only when the facts concerning the lawyer's conduct poses a significant risk of trial taint," particularly when the "'attorney is at least potentially in a position to use privileged information concerning the other side through prior representation . . . , thus giving his present client an unfair advantage.'" Mitchell v. Metro. Life Ins. Co., Inc., 01 CIV. 2112 (WHP), 2002 WL 441194, at *4 (S.D.N.Y. Mar. 21, 2002) (quoting Armstrong v.

10

McAplpin, 625 F.2d 433, 444 (2d Cir. 1980), vacated on other grounds and remanded, 499 U.S. 1106 (1981)); see also Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981).

This Court has recognized three grounds on which an attorney could be disqualified "(1) where an attorney's conflict of interests undermines the court's confidence in the vigor of the attorney's representation of his client[;] (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation thus giving his present client an unfair advantage[;] . . . [or (3)] where an attorney is in a position to use confidential information obtained from a potential client," which is "derive[d] from the New York Code of Professional Responsibility Rule 1.18." Miness v. Ahuja, 762 F. Supp. 2d 465, 478–79 (E.D.N.Y. 2010) (citations and internal quotation marks omitted). However, as indicated above, "the issue is whether there is a real risk that the trial will be tainted." Hickman, 371 F. Supp. 2d at 229 (citations and internal quotation marks omitted).

**B.  As to the Defendants' Motion to Disqualify Leeds Brown as the Plaintiffs' Counsel**

As an initial matter, the Defendants use a significant portion of their motion and reply papers to challenge Leeds Brown's adequacy as class counsel. In this regard, the Defendants argue that Leeds Brown is inadequate because (1) Leeds Brown has an alleged conflict since it is representing the Plaintiff Shea in another litigation, namely a state action claiming sexual harassment by the Defendants (the "State Action"); (2) Leeds Brown allegedly solicited the Plaintiffs to join this class action, in violation of NYRPC 7.3; and (3) Leeds Brown has an alleged history of ethical lapses litigating other class actions, including breaching the Settlement Agreement from the Mendez Action.

However, in large part, the issues raised by the Defendants are not appropriate for the Court to consider at this stage of the litigation. This is because the Plaintiffs have only moved to

conditionally certify a collective action pursuant to 29 U.S.C. § 216(b) for the purposes of litigating their FLSA claims, and have not taken any action to move to certify a Fed. R. Civ. P. 23 class with respect to their NYLL and NYCRR claims. Importantly, "[a] collective action under the FLSA is different from the typical class action under the Federal Rules of Civil Procedure, the strict requirements of which—numerosity, commonality, typicality, and adequate representation—do not apply to a collective action." Puglisi v. TD Bank, N.A., CV 13-00637 LDW GRB, 2014 WL 702185, at *3 (E.D.N.Y. Feb. 25, 2014). See also Ahmed v. T.J. Maxx Corp., 10-CV-3609 ADS ETB, 2013 WL 2649544, at *7 (E.D.N.Y. June 8, 2013) (Spatt, J.) ("A collective action under Section 216 is distinguishable in several ways from the more common class action under Fed. R. Civ. P. 23. First, a collective action requires class members to opt into the case, rather than opt out. In addition, a party seeking conditional certification of a collective action need not demonstrate the Rule 23 requirements of numerosity, commonality, typicality, and adequacy of representation.") (citing Iglesias—Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007); Scholtisek v. Eldre Corp., 229 F.R.D. 381, 386 (W.D.N.Y. 2005)).

Rather, certification of a collective action class in an FLSA case is analyzed in two steps. The first step is called conditional certification, which is what the Plaintiffs currently seek and which is the subject of their motion pending before Judge Lindsay. Conditional certification is generally completed prior to the commencement of any significant discovery, Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007), and only requires a plaintiff to make "a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law," Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998). Once a court conditionally certifies a collective action, it may then facilitate notice to all of the putative class members by approving a notice

12

form. Lynch, 491 F. Supp. 2d at 367 (citing Hoffmann—La Roche Inc. v. Sperling, 493 U.S. 165, 173, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)).

The second step in a collective action certification generally arises only after discovery is completed, and only if it appears that some or all members of a conditionally certified class are not similarly situated. In that case, a defendant may move to challenge certification, at which point a court will conduct a more searching factual inquiry as to whether the class members are truly similarly situated. Lynch, 491 F. Supp. 2d at 367. Of note, neither the first step nor the second step of certifying an FLSA collective action class requires an inquiry into the adequacy of class counsel. Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010) ("Notably, in relation to the conditional certification of an action under the FLSA, 'a named plaintiff in a collective action need not demonstrate other facts—numerosity, commonality, typicality, and adequacy of representation—which are required to bring a class action' under Rule 23.") (quoting Sexton v. Franklin First Fin'l, Ltd., No. 08–CV–4950 (JFB)(ARL), 2009 WL 1706535, at *4 (E.D.N.Y. June 16, 2009)).

As a consequence, to the extent the Defendants seek to disqualify Leeds Brown as Plaintiffs' counsel on the grounds that they are inadequate to serve as class counsel, the Court rejects these arguments as inappropriately raised at this time, since no Fed. R. Civ. P. 23 motion is before the Court. For example, the Defendants argue that Leeds Brown should be disqualified because of alleged ethical lapses in litigating previous class actions outside of the present case, including purportedly breaching the revised Settlement Agreement entered into in the Mendez Action. While this contention might pertain to the adequacy of representation prong in the context of a Rule 23 analysis, in the Court's view, it is not a sufficient ground to disqualify Leeds Brown as the Plaintiffs' counsel in this lawsuit. See, e.g., Pullman v. Alpha Media Pub., Inc., 12

13

CIV. 1924 PAC JCF, 2012 WL 3114939, at *5 (S.D.N.Y. July 31, 2012); Shabbir v. Pakistan Int'l Airlines, 443 F. Supp. 2d 299, 312 (E.D.N.Y. 2005). Indeed, "[t]he proper forum to address violations of the Rules of Professional Conduct is a federal or state bar disciplinary proceeding." Pullman, 2012 WL 3114939, at *5. However, should the Plaintiffs decide to move for class certification pursuant to Fed. R. Civ. P. 23 for their NYLL and NYCRR claims, the Defendants may raise these arguments in opposition to the motion.

Concerning the Defendants' contention that Leeds Brown should be disqualified because it has a conflict of interest, the Court is unpersuaded. In this regard, the Defendants claim that Leeds Brown's representation of Shea against the Defendants in the State Action creates a conflict of interest, in that Shea in the State Action and the Plaintiffs here are all attempting to recover from the same pool of money. As such, according to the Defendants, Leeds Brown's loyalty will be divided during potential settlement negotiations or in the event a judgment is issued in either this action or the State Action.

"Rule 1.7 of the New York Rules of Professional Conduct [ ] states in pertinent part that 'a lawyer shall not represent a client if a reasonable lawyer would conclude that [ ] the representation will involve the lawyer in representing differing interests[.]" Merck Eprova AG v. ProThera, Inc., 670 F. Supp. 2d 201, 208 (S.D.N.Y. 2009) (quoting NYRPC 1.7(a)(1)). "Where a conflict is alleged," and "the representation is concurrent, it is 'prima facie improper for an attorney to simultaneously represent a client and another party with interests directly adverse to that client.'" Id. (quoting Hempstead Video, 409 F.3d at 133). Although "the 'per se' standard applies," an attorney may nevertheless avoid disqualification if "he can demonstrate 'at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation.'" Id. (quoting Hempstead Video, 409 F.3d at 133).

Courts in this Circuit have analyzed, for Rule 23 purposes, whether a conflict exists when an attorney represents different plaintiffs in separate actions against the same defendant, but it appears no court has ever considered disqualifying an attorney on this basis. See, e.g., Seijas v. Republic of Argentina, 606 F.3d 53, 57 (2d Cir. 2010) (affirming the district court's ruling that although class counsel also represented individual plaintiffs in non-class actions and "all of these plaintiffs [were] theoretically in competition with one another to recover on their judgments," that "the potential conflicts of interest would threaten the damages phase of the proceedings, not the liability phase" and that it would "revisit the damages issue if necessary, recognizing its continuing obligation to do so"); Sriram v. Pittore, 92 CIV. 5244 (JSM), 1992 WL 367106, at *1 (S.D.N.Y. Nov. 24, 1992) ("[The] defendants' sole objection [to the motion for class certification] is an alleged conflict arising from the fact that counsel is also counsel for a class of plaintiffs suing some of the same defendants in [a separate lawsuit]. [The] Defendants allege that since they do not have sufficient funds to pay judgments in both actions, counsel will have a conflict of interest. Here, the benefits to the class of having the same counsel involved where the issues of fact overlap far outweigh any danger of prejudice to the class members from the alleged conflict."). The Court finds no reason to diverge from this precedent. Moreover, again, the Defendants can raise this argument should the Plaintiffs move for class certification pursuant to Fed. R. Civ. P. 23.

Lastly, the Defendants suggest that Leeds Brown should be disqualified because they solicited some of the Plaintiffs to join this action in violation of NYRPC 7.3(a). This rule prohibits a lawyer from "engag[ing] in solicitation [ ] by in person or telephone contact, or by real-time or interactive computer-accessed communication unless the recipient is a close friend, relative, former client or existing client . . . ." NYRPC 7.3(a)(1).

15

However, the only evidence that the Defendants offer in support of their contention that Leeds Brown solicited clients is a vague and undated Facebook message the Plaintiff Shea sent to an employee of the Defendants, Spyro Agnew. In this regard, her message states as follows:

> Hey Spyro,
>
> I wanted to let you know that there is a class action law suit [sic] against Louies [sic] for non payment [sic] of overtime. I was contacted by a law firm. We are all owed money. Contact me if you're interested. If you can think of anyone who was a busboy or worked in the kitchen and did not receive overtime pay please let them know.
> Talk to you soon…Hope all is well!

(Graff, Exh. K, ellipse in original.) Shea's message is unsworn to and unsigned. Further, it does not identify which law firm contacted her. In addition, even assuming Shea was contacted by Leeds Brown, it is possible that Leeds Brown contacted Shea after she first reached out to them.

Indeed, Shea's signed declaration indicates that in February of 2013, she was searching for a firm to represent her in the State Action and discovered Leeds Brown through using the online search engine Google. After contacting Leeds Brown, Shea then met with them on February 22, 2013 for a consultation. Shea states in her declaration that she never communicated with Leeds Brown prior to her contacting them in February of 2013. In addition, she explains that while she stayed in touch with former co-workers through Facebook and informed them about this case, she was never directed by Leeds Brown to solicit clients on their behalf. See, e.g., German v. Fed. Home Loan Mortgage Corp., 885 F. Supp. 537, 557 decision clarified on reargument sub nom. 896 F. Supp. 1385 (S.D.N.Y. 1995) ("The affidavits and declarations of most tenants in the building negate the claims by defendants regarding solicitations. The allegations of improper solicitation have not been established by the defendants in this case.").

In any event, even assuming that Leeds Brown did improperly solicit clients, such a violation of the NYRPC would not, in the Court's view, support disqualification here. See, e.g., U.S. v. Occidental Chemical Corp., 606 F. Supp. 1470, 1476–78 (W.D.N.Y. 1985) (finding that although counsel for the defendants' actions constituted an improper solicitation of business, disqualification was not warranted). In fact, the Defendants offer no case that would support such a result, and the Court has not discovered any court within this Circuit that has disqualified an attorney when confronted with similar circumstances.

Accordingly, the Court denies the Defendants' motion for disqualification or, in the alternative, to deny Leeds Brown class counsel status in its entirety. The Court notes that this ruling is without prejudice, in that the Defendants are free to raise these issues again at the appropriate time in the event the Plaintiffs move for class certification under Fed. R. Civ. P. 23.

## IV. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, the Defendants' motion for disqualification or, in the alternative, to deny Leeds Brown class counsel status is denied. This ruling is without prejudice, in that the Defendants are free to raise these issues again at the appropriate time in the event the Plaintiffs move for class certification under Fed. R. Civ. P. 23.

**SO ORDERED.**
Dated: Central Islip, New York
May 15, 2014

　　　　　　　　　　　　　　　　　　　　　___/s/ Arthur D. Spatt_____
　　　　　　　　　　　　　　　　　　　　　　ARTHUR D. SPATT
　　　　　　　　　　　　　　　　　　　　　United States District Judge