VIRGINIA & AMBINDER, LLP
Lloyd R. Ambinder, Esq.
40 Broad Street, Seventh Floor
New York, New York 10004
(212) 943-9080
lambinder@vandallp.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL SPAGNUOLI, KELLIE SHEA, and JOSEPH VESELAK, individually and on behalf of other persons similarly situated,<br><br><div align="right">Plaintiffs,</div><br><div align="center">-against-</div><br>LOUIE'S SEAFOOD RESTAURANT, LLC and/or any other entities affiliated with, controlling, or controlled by LOUIE'S SEAFOOD RESTAURANT, LLC and/or MARTIN PICONE and MICHAEL GUINNANE,<br><div align="right">Defendants.</div> | 16-CV-4907 (JMA)(ARL) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF THE COLLECTIVE AND CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

I.     FACTUAL AND PROCEDURAL BACKGROUND ......................................... 1
     A. Nature of Plaintiffs' Claims ................................................................ 2
     B. Settlement Negotiations ..................................................................... 2
II.    SUMMARY OF THE SETTLEMENT TERMS ............................................. 2
     A. The Settlement Fund ........................................................................ 2
     B. Eligible Employees ........................................................................... 2
     C. Releases .......................................................................................... 3
     D. Allocation Formula .......................................................................... 3
     E. Attorneys' Fees, Litigation Costs, and Service Awards .......................... 4
III.   FLSA COLLECTIVE ACTION SETTLEMENT ........................................... 5
     A. FLSA COLLECTIVE ACTION SETTLEMENT PROCEDURE .............. 5
     B. FINAL APPROVAL OF THE FLSA COLLECTIVE ACTION
        SETTLEMNET IS APPROPRIATE ................................................... 5
        1.   *Cheeks* Concerns are Not Present ................................................ 7
        2.   Bona Fide Dispute Exists Between the Parties ............................. 7
        3.   The Settlement is Fair in Light of the Range of Possible Recovery 8
        4.   The Settlement Mitigates Risk for Both Parties Given the Claims
           and Defenses ........................................................................... 9
        5.   The Settlement is a Product of Arm's-Length Bargaining Between
           Experienced Counsel with the aid of a qualified Mediator, and
           There is No Fraud or Collusion ................................................ 10

IV.   CLASS ACTION SETTLEMENT .............................................................. 11
     A. CLASS ACTION SETTLEMENT PROCEDURE .................................. 11
     B. PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT
        IS APPROPRIATE ....................................................................... 12
        1.   The Settlement is Fair, Reasonable, and Adequate .......................... 14
        2.   Litigation Through Trial Would be Complex, Costly, and Long
           (*Grinnell* Factor 1) ................................................................. 14
        3.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ...... 15
        4.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve
           the Case Responsibly (Grinnell Factor 3) ................................... 15
        5.   Plaintiffs Would Face Risks if the Case Proceeded (*Grinnell* Factors 4
           & 5) ........................................................................................ 16
        6.   Risks Involved in Maintaining the Class Through Trial (*Grinnell*
           Factor 6) ................................................................................ 17

       7. Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7) ....................................................17

       8. The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ...............................................................................................17

V.     THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE............................................................................................18

      CONCLUSION...........................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Beckert v. Rubinov,*
15-CV-1951, 2015 WL 6503832 (S.D.N.Y., Oct. 27, 2015)........................................... 6

*Beckman v. Keybank, N.A.,*
293 F.R.D. 467, 476 (S.D.N.Y. 2013) ........................................................................ 7

*Cagan v. Anchor Sav. Bank FSB,*
No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................9, 18

*Caprile v. Harabel Inc.,*
4-CV-6386, 2015 WL 5581568 (S.D.N.Y. Sept. 16, 2015) ......................................... 6

*Cheeks v. Freeport Pancake House,*
796 F. 3d at 206 (2nd Cir. 2015)........................................................................5, 6, 7

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448, 463 (2d Cir. 1974)........................................................................*passim*

*Clark v. Ecolab Inc.,*
2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ...........................................................13

*deMunecas v. Bold Food, LLC,*
2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010) ............................................ 6

*Dorn v. Eddington Sec., Inc.,*
No. 08 Civ. 10271, 2011 WL 382200(S.D.N.Y. Jan. 21, 2011)...................................16

*Frank v. Eastman Kodak Co.,*
228 F.R.D. 174, 184 (W.D.N.Y. 2005) ..............................................................*passim*

*In re Austrian & German Bank Holocaust Litig.,*
80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ................................................................15

*In re EVCI Career Colls. Holding Corp. Sec. Litig.,*
2007 WL 2230177(S.D.N.Y. July 27, 2007) ............................................................13

*In re Ira Haupt & Co.,*
304 F. Supp. 917, 934 (S.D.N.Y. 1969) ................................................................9, 16

*In re Michael Milken & Assocs. Sec. Litig.,*
150 F.R.D. 57, 60 (S.D.N.Y. 1993) ........................................................................19

*In re Painewebber Ltd. P'ships Litig.*,
171 F.R.D. 104, 126 (S.D.N.Y. 1997) ...................................................................16

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516, 535 (3d Cir. 2004) ................................................................... 12, 15

*In re Traffic Exec. Ass'n E. R.Rs.*,
627 F.2d 631, 634 (2d Cir. 1980)..........................................................................13

*Lliquichuzhca v. Cinema 60,LLC*,
948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) .......................................................... 6

Maywalt v. Parker & Parsley Petroleum Co.,
67 F.3d 1072, 1079 (2d Cir. 1995)........................................................................13

*Medley v. Am. Cancer Soc.*,
No. 10 Civ. 3214, 2010 U.S. Dist. LEXIS 75098 (S.D.N.Y. July 23, 2010) ................ 6

*Meigel v. Flowers of the World, NYC, Inc.*,
2012 U.S. Dist. LEXIS 2359 Civ. 465 (KBF) (S.D.N.Y. Jan. 9, 2012) .......................11

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615, 628 (9th Cir. 1982) .....................................................................9, 18

*Tart v. Lions Gate Entm't Corp.*,
2015 U.S. Dist. LEXIS 139266 (S.D.N.Y. Oct. 13, 2015) .........................................10

*Velez v. Majik Cleaning Serv., Inc.*,
No. 03 Civ. 8698, 2007 WL 7232783 ............................................................... 10, 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96, 116 (2d Cir. 2005) ...........................................................................12

*Veselak v. Louie's Seafood Restaurant, LLC*,
Index No. 603267/2015 (Sup. Ct. Nassau Cty., May 21, 2015)................................... 1

*Willix v. Healthfirst, Inc.*,
*07-CCV-1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)* .......................................... 6

*Wolinsky v. Scholastic Inc.*,
900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) ............................................................. 5

**Statutes**

Federal Rules of Civil Procedure, Rule 23 ....................................................... 12, 19

**Other Authorities**

*Newberg on Class Actions*
§§ 11.22, *et seq.* (4th ed. 2002) ........................................................................ 12, 13

## INTRODUCTION

Subject to this Court's approval, the Named Plaintiffs Joseph Veselak and Michael Spagnouli, in addition to members of the FLSA collective action, members of the New York putative class (collectively as "Plaintiffs"), and Defendants Louie's Seafood Restaurant, LLC; Martin Picone, and Michael Guinnane (collectively as "Louie's" or "Defendants") have settled this wage and hour class and collective action for a total of $170,000 – to be distributed based on the weeks worked.  The proposed settlement satisfies all of the criteria for preliminary approval. Plaintiffs respectfully request that the Court grant: (i) preliminary approval of the FLSA collective action settlement; (ii) preliminary approval of the proposed class action settlement; (iii) certification of the New York Settlement Class; (iv) appointment of Plaintiffs' counsel as class counsel; (v) approval of Plaintiffs' proposed Notice of Settlement; (vi) approval of Plaintiffs' proposed Claim Form and Release; (vii) together with such other and further relief as the Court may deem just and proper. Defendants do not oppose this motion.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### a.  Nature of Plaintiffs' Claims

The Named Plaintiffs initiated this action on behalf of themselves and all similarly situated co-workers to recover alleged unpaid wages, including overtime compensation, "off-the-clock" wages and, in a separate action, unpaid gratuities owed to all present and former hourly employees of Defendants' restaurant – commonly known as Louie's Oyster Bar and Grille. *See* Dkt. No. 1; *see also Veselak v. Louie's Seafood Restaurant, LLC*, Index No. 603267/2015 (Sup. Ct. Nassau Cty., May 21, 2015).

### b.  Settlement Negotiations

After significant discovery, motion practice and numerous protracted settlement negotiations, including multiple conferences before this Court, the parties agreed on the terms of the Settlement Agreement. [See Settlement Agreement at Exhibit A].  Plaintiffs did substantial work to prepare for settlement meetings and telephonic conferences. Plaintiffs reviewed thousands of pages of documents – including pay records, time records, tip records, and other restaurant related documents that would assist in assessing the claims and defenses presented here.

## II.      SUMMARY OF THE SETTLEMENT TERMS

### A.  The Settlement Fund

The Settlement Agreement creates a Gross Settlement Fund not to exceed $170,000 (the "Fund").  See Settlement Agreement § 1.29. The Fund covers service awards for the Named Plaintiffs and some Opt-in Plaintiffs, and professional fees and costs.

### B.  Eligible Employees

With respect to the Settlement Agreement, the eligible employees include three categories of workers who will all entitled different allocated shares based on their job classification and the time period in which they worked: (1) Front of the House ("FOH") workers who performed work for Louie's at any time from Sept. 4, 2007 through Dec. 31, 2013, as waiters, servers, bartenders, bussers, runners, and in other positions that customarily receive tips, will be eligible to receive $25.00 per week for each week worked in such capacity during the Relevant Period (defined as Sept. 4, 2007 through the date the Settlement Agreement is preliminarily approved); (2) Back of the House ("BOH") workers who performed work for Louie's at any time from Sept. 4, 2007 through Dec. 31, 2013, as chefs, cooks, dishwashers, and in other positions that customarily do not receive tips will be eligible to receive $36.25 per week

2

for each week worked in such capacity during the Relevant Period; and (3) all FOH or BOH Louie's employees who performed work from Jan. 1, 2014  to date of Preliminary Approval Order, will be eligible to receive a flat rate of $50.00, in consideration for a release of FLSA and State Law Claims and Release Class Claims.

### C. Releases

Each Class Member who does not timely opt-out of the settlement shall release Defendants from all wage and hour claims under New York Labor Law that were, or could have been, brought in the litigation, and interest, liquidated damages, attorneys' fees, and costs with respect to such claims.[1]  See Ex. A, Settlement Agreement §§ 1.26, 1.30, and 4.1.  Each Authorized Claimant[2] who files a Claim Form and Release shall release Defendants from all wage and hour claims under the Fair Labor Standards Act and under New York Labor Law that were, or could have been, brought in the litigation, and interest, liquidated damages, attorneys' fees, and costs with respect to such claims.  Id. [See Class Claim Form and Release at Exhibit B].

### D. Allocation Formula

Individual Authorized Claimant's share of the Settlement Fund shall be computed as follows:

i.  FOH Claimants. Each FOH Authorized Claimant whose employment with Louie's commenced between Sept. 4, 2007 and Dec. 31, 2013 will receive $25.00 per week for each week worked during the Relevant Period.

ii.  BOH Claimants. Each BOH Authorized Claimant whose employment with Louie's commenced between Sept. 4, 2007 and Dec. 31, 2013 will receive $36.25 per week for each week worked during the Relevant Period.

iii.  Post-Complaint Claimants.  Class Members who performed work from January 1, 2014 to date of Preliminary Approval Order shall only be entitled to collect a flat rate of $50.00, in consideration for a release of FLSA and State Law Claims and Release Class Claims.

---

[1] The settlement agreement will also bar any future claim by any Class Member regarding his/her FLSA claim pursuant to the doctrine of *res judicata*.

[2] "Authorized Claimant" shall mean those Class Members who file a timely claim form and are eligible to receive a Settlement Check.  See Settlement Agreement § 1.3.

iv.    Named Plaintiffs. Class Counsel shall seek Court Approval of the payment of a Service Awards of $4,750 for Named Plaintiffs Veselak and Spagnouli and $2,750 for Opt-in Plaintiffs who provided service to the class, for a total of no more than $7,500, in consideration for work performed on behalf of the Class. This amount shall be in addition to the amounts owed under Subsection (i), (ii), or (iii) above. Defendants may not oppose or comment on this application. The substance of Plaintiffs' application for a Service Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's Final Approval.

*See* Ex. A, Settlement Agreement § 3.2(D).

### E.   Attorneys' Fees, Litigation Costs, and Service Awards

At the Fairness Hearing, Class Counsel will petition the Court for an award of attorney's fees and costs not to exceed $100,000.00, inclusive of a substantial portion of the actual litigation expenses and costs.  See Settlement Agreement § 3.3.  The Court need not decide attorneys' fees and costs now.  Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Plaintiffs' Counsel will move for attorneys' fees and costs along with their Motion for Final Approval of the Settlement. Plaintiffs, with Defendants' consent, will apply for a service award of $7,500.00 for Named Plaintiffs and collective members that provided services for the class, which shall be paid from the Settlement Fund. See Settlement Agreement § 3.3.[3] The Court need not rule on the proposed attorneys' fees award or service award now. Plaintiffs will file separate motions asking the Court to approve them simultaneously with Plaintiffs' Motion for Final Approval of the Settlement. Defendants do not oppose the proposed attorneys' fees award or the service award.

Defendants shall remit the Settlement Fund payments, no later than thirty (30) days from

---

[3] Service award applications are common in the Second Circuit, and typically granted.  *See, e.g.*, *Sewell v. Bovis Lend Lease, Inc., et al.*, No. 09-CV-6548, 2013 U.S. Dist. LEXIS 47526, at *14-15 (granting service awards of $15,000 and $10,000 to class representatives in wage and hour class action settlement, and listing supporting cases); *Johnson*, 2011 WL 4357376, at *21 (granting service awards of $10,000 to class representatives in wage and hour settlement).

the date that the Final Order is So-ordered by the Court, to Class Counsel for distribution to the

Claimants and for professional fees and costs.  See Ex. A, Settlement Agreement § 3.1.


### III.        FLSA COLLECTIVE ACTION SETTLEMENT

#### A) FLSA COLLECTIVE ACTION SETTLEMENT PROCEDURE

The FLSA collective action settlement procedure includes two distinct steps:

1. Final approval of the proposed settlement after submission to the Court of the instant motion; and

2. Dissemination of mailed and/or published notice of settlement to all affected class members with settlement checks and release enclosed with thirty (30) days of Final Approval of the FLSA Collective Action Settlement.

#### B) FINAL APPROVAL OF THE FLSA COLLECTIVE ACTION SETTLEMENT IS APPROPRIATE

In order to dismiss FLSA claims with prejudice pursuant to Rule 41 of the F.R.C.P., the

parties must seek approval of the district court or the Department of Labor. *See Cheeks v.*

*Freeport Pancake House*, 796 F. 3d at 206 (2nd Cir. 2015). In *Cheeks*, the Court remanded the

case to the district court for the purpose of reviewing the proposed settlement, while noting that

FLSA settlements "highlight[] the potential for abuse in such settlements and underscore why

judicial approval in the FLSA setting is necessary …." Id. at 206 (citing *Guareno v. Vincent*

*Perito, Inc.*, 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept.26, 2014)). Prior to *Cheeks*,

other courts acknowledged their role in reviewing agreements. The FLSA places "strict limits on

an employee's ability to waive claims ... for fear that employers would [otherwise] coerce

employees into settlement and waiver." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335

(S.D.N.Y. 2012) (*quoting Le v. SITA Info. Networking Computing USA, Inc*., 07-CV-86 US)

(MLO), 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)). In *Cheeks*, the Second Circuit noted

several pertinent issues that courts need to be careful to scrutinize: (1) highly restrictive confidentiality provisions, (2) overbroad releases, (3) inflated fees above 40% of settlement proceeds, and (4) resolutions that attempt to avoid collective actions for similarly situated individuals. *Id*. at 206; *see Caprile v. Harabel Inc.*, 14-CV-6386, 2015 WL 5581568, at *1 (S.D.N.Y. Sept. 16, 2015).

Where none of those concerns are present, the court still must ultimately assess the reasonableness and fairness of the settlement to ensure "the proposed settlement reflects a reasonable compromise over contested issues" under the totality of the circumstances. *See Beckert v. Rubinov*, 15-CV-1951, 2015 WL 6503832, at *1 (S.D.N.Y., Oct. 27, 2015); *Willix v. Healthfirst, Inc., 07-CCV-1143, 2011 WL 754862, at *5 (E.D.N.Y. Feb. 18, 2011)*; *deMunecas v. Bold Food, LLC*, 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010). Courts consider a multitude of factors to assess whether an FLSA settlement is fair and reasonable, including: (1) the range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See e.g., Beckert*, 2015 WL 6503832, at *1 (S.D.N.Y., Oct. 27, 2015) *(quoting Wolinsky*, 900 F. Supp. 2d at 335); *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214, 2010 U.S. Dist. LEXIS 75098 (S.D.N.Y. July 23, 2010). Based on these factors, Plaintiffs respectfully submit that the proposed FLSA settlement agreement here is fair and reasonable and contains none of those concerns address by *Cheeks*.

"Generally, there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliquichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y.

2013). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013), citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982).

### (1) Cheeks *Concerns Are Not Present*

Here, there is no confidentiality provision that would impinge on the FLSA's remedial purpose. Additionally, the release is limited solely to wage and hour related and 'derivative benefit' claims that the Class Members have related to their employment with Defendants. *See* Ex. A, Settlement Agreement §§ 1.19, 1.26, 1.30, and 4.1. Plaintiffs' Counsel is only seeking $100,000 of the fund of the proposed pool, and is not making an application for fees until after the calculations are finalized and Class Members are given the opportunity to be heard, should they elect to do so. *See* Ex. A, Settlement Agreement § 2.11. And the fourth concern is not present here, as Plaintiffs have secured a settlement for all Class Members who were similarly situated during the relevant time period. See Ex. A, Settlement Agreement § 1.7 (defining all Class Members as "all present and former persons employed by Defendants at the restaurant commonly known as Louie's Oyster Bar & Grille at any time between Sept. 4, 2007 through the date the Court approves this Agreement in the FLSA Action.").

### (2) *Bona Fide Dispute Exists Between the Parties*

As a threshold matter under *Cheeks*, it is clear here that there is a dispute amongst the parties about (1) whether Plaintiffs performed unrecorded time, (2) whether Defendants paid Plaintiffs overtime compensation when they worked over 40 hours of week; (3) whether Defendants properly paid employees all minimum wage; and (4) whether Defendants provided adequate notice to allow them to pay the tip credit minimum wage. In the related *Veselak* matter, the parties disputed whether all gratuities were distributed to the service employees.

7

### *(3) The Settlement is Fair in Light of the Range of Possible Recovery*

Defendants have agreed to pay One Hundred Seventy Thousand Dollars ($170,000) to Plaintiffs. Specifically, Class Members who become Class Claimants shall be entitled to receive a portion of the Gross Settlement Fund based on their weeks worked. Class Claimants shall be divided into three categories for the purposes of calculations, as detailed below:

> Subclass 1: Front of the House ("FOH") workers, including waiters, servers, bartenders, bussers, runners, and other positions that customarily receive tips. Each FOH Authorized Claimant will receive $25.00 per week for each week worked during the Relevant Period.
>
> Subclass 2: Back of the House ("BOH") workers, including chefs, cooks, dishwashers, and other positions that customarily do not receive tips. Each BOH Authorized Claimant will receive $36.25 per week for each week worked during the Relevant Period.
>
> Subclass 3: Class Members who performed work from January 1, 2014, to date of Preliminary Approval Order shall only be entitled to collect a flat rate of $50, in consideration for a release of FLSA and State Law Claims and Release Class Claims.

These payments represent considerable value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs overcame motions to decertify the collective, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (*quoting In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164,178 (S.D.N.Y. 2000)). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (*quoting Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash

8

settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

### (4) The Settlement Mitigates Risk for Both Parties Given the Claims and Defenses

Throughout the litigation, there were significant factual and legal disputes that went to the heart of Plaintiffs' claims. First, Plaintiffs alleged that Defendants failed to record and compensate employees for all hours worked, notably hours above 40 hours in a work week. [*See Doc. Nos.* 50-5 through 50-7, Declarations of the Named Plaintiffs and Opt-in Plaintiff in support of Plaintiffs' motion for conditional certification]. In light of the "off-the-clock" nature of these claims, the evidentiary support would have been based almost entirely on worker testimony, and would not have necessarily been reflected in the time records. Further, Defendants vehemently contested the veracity of these claims. These disputed issues increased the risk that this group of workers would not recover anything in the end.

Although Plaintiffs' Counsel believes Plaintiffs' case is meritorious, it is subject to considerable risk. Additionally, Plaintiffs would have to expend the time and energy to recreate or establish the time records, as Plaintiffs performed many responsibilities in peak and off peak seasons during the extensive time period, and there may be no records that reflect the true amount of hours that they worked. Though Plaintiffs believe they would be able to rebut a presumption that Defendants' pay and time records are complete, there are many unknowns in litigation.

Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y.

9

1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). A trial on the merits would involve significant risks for Plaintiffs, particularly as it relates to damages. Plaintiffs would have to overcome Defendants' defenses, including that Class Members were in fact paid for all time, that Class Members did not work nearly as many hours each week as they allege, and that Defendants provided Plaintiffs with proper notice and allowed Plaintiffs to receive all of the tips they were entitled.

Plaintiffs' Counsel believes that they could ultimately establish both liability and damages, and Defendants are confident in their defenses. Both would require significant factual development and testimony – including experts with knowledge of the POS databases and underlying metadata.  Plaintiffs' Counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the potential appeals process is inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of approval.  *See Frank*, 228 F.R.D. at 187 ("If settlement were disapproved, it is likely that [defendant] would challenge the class certification.  While plaintiffs might indeed prevail, the risk that the case might not be certified is not illusory and weighs in favor of the Class Settlement.").

### (5) The Settlement is a Product of Arm's-Length Bargaining Between Experienced Counsel with the aid of a qualified Mediator, and There is No Fraud or Collusion

Virginia & Ambinder, P.C. and Leeds Brown Law, P.C. are experienced litigators who have successfully represented workers in numerous class and collective actions and have considerable experience in labor law cases similar to the case at bar. *See* Ambinder Dec. at ¶¶ 7-8; *Tart v. Lions Gate Entm't Corp.*, 2015 U.S. Dist. LEXIS 139266 (S.D.N.Y. Oct. 13, 2015) ("Virginia & Ambinder, P.C. and Leeds Brown Law, P.C. are experienced and well-qualified employment and class action lawyers with expertise in prosecuting and settling labor law cases.

10

The substantial work that Plaintiffs' Counsel has performed in investigating, litigating and reaching a settlement in this case demonstrates their commitment to the class and representing the class's interests, as well as their general ability to conduct this litigation.")

Additionally, the parties arrived at this settlement only after engaging in discovery, exchange of documents, motion practice, and substantive settlement negotiations.

In light of the strength of the claims and evidentiary burdens if this case were to proceed to trial, counsel believes this settlement is extremely fair and reasonable, and compensates claimants with a substantial portion, if not all, of their alleged unpaid wages. Considering the numerous risks in this case and the uncertainly of further litigation, this settlement is an excellent result for the Plaintiffs, and it should be approved as a fair settlement.   *See e.g. Meigel v. Flowers of the World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3, 11 Civ. 465 (KBF) (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.") (internal citations omitted).

**IV.   CLASS ACTION SETTLEMENT**

**A) CLASS ACTION SETTLEMENT PROCEDURE**

The well-defined class action settlement procedure includes three distinct steps:

1.   Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.   Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.   A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

11

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002).  Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, approving the parties' Proposed Notice, and authorizing Plaintiffs to publish the Notice to Class Members.

The Parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1. The Notice will be mailed to Class Members within thirty (30) days of the entry of the Preliminary Approval Order by the Court.  See Ex. A, Settlement Agreement § 2.7.

2. Class Members will have forty-five (45) days after the mailing of the Notice to file a claim, to object to the settlement or to opt out of the settlement.  See Ex. A, See Settlement Agreement § 2.7.

3. Plaintiffs will file a Motion for Final Approval of Settlement no later than 15 days before the Fairness Hearing.

4. After the final Fairness Hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment.  If no reconsideration or rehearing is sought of the Court's Final Order and Judgment, the Final Effective Date shall be the first date after the Court has entered a Final Approval Order approving this settlement.  See Settlement Agreement § 2.7.

## B) PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion.  *See Maywalt*

*v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).  "[C]ourts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ."  *Clark v. Ecolab Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks and citations omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.  *Clark*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citing *Newberg* § 11.25).  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Ass'n E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members)(quoting *Manual for Complex Litigation* (Third) §30.41) [4].

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).  Preliminary

---

[4] Courts often grant preliminary settlement approval without requiring a hearing or a court appearance.  *See, e.g.*, *Hernandez v. Immortal Rise, Inc.*, 2012 WL 5862749, at *1 (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits); *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012) (same); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. June 3, 2011) (same); *deMunecas v. Bold Food*, No. 09 Civ. 00440, 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y 2010)(same).

13

approval is the first step in the settlement process.  It simply allows notice to issue and for Class Members to join in the settlement, object or opt out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of Class Members' input.

### 1.     The Settlement is Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*").  Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id.* at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement. The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial;  (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.  All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

### 2.     Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class

actions are inherently complex and settlement avoids the costs, delays and multitude of other

problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp.

2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir.

2001).  This case is no exception, with more than 120 Class Members and claims under federal

and state law.

　　　　Further litigation here would cause additional expense and delay.   In addition, the Parties

likely would file cross-motions for summary judgment.  If the Court denied the motions, a fact-

intensive trial would necessarily follow.   A trial would be lengthy and complex and would

consume tremendous time and resources for the Parties and the Court.   Any judgment would

likely be appealed, further extending the litigation.   The settlement, on the other hand, makes

monetary relief available to Class Members in a prompt and efficient manner.   Therefore, the

first *Grinnell* factor weighs in favor of approval.

　　　　**3.　　　The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)**

　　　　Notice of the settlement and its details has not yet been issued to the class.  The Court

should more fully analyze this factor after notice issues and Class Members are given the

opportunity to opt out or object.   At this early stage in the process, the Named Plaintiffs have

expressed approval of the settlement.   In addition, those opt-ins who have learned of the

settlement have reacted positively to the settlement.

　　　　**4.　　　Discovery Has Advanced Far Enough to Allow the Parties to Resolve the
　　　　　　　　Case Responsibly (*Grinnell* Factor 3)**

　　　　The Parties have completed enough discovery to recommend settlement. The proper

question is "whether counsel had an adequate appreciation of the merits of the case before

negotiating."   *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).

　　　　The Parties' discovery here meets this standard.   Plaintiffs' Counsel conducted a

thorough investigation and legal research on the underlying merits of the class claims, the likelihood of obtaining liquidated damages and an extended FLSA statute of limitations, and the proper measure of damages.  The parties have engaged in substantial discovery including the review of Louie's personnel files and payroll records, as well as interrogatory and document responses for many of the Opt-in Plaintiffs. Additionally, Plaintiffs' Counsel conducted further investigation including, but not limited to, interviewing former workers and obtaining declarations from Plaintiffs and Class Members, and analyzing documents produced by Defendants.  This factor favors preliminary approval.  *See Dorn v. Eddington Sec., Inc*., No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding, in case at similar stage of discovery, that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims.").

### 5.   Plaintiffs Would Face Risks if the Case Proceeded (*Grinnell* Factors 4 & 5)

Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks."  *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).

A trial on the merits would involve significant risks for Plaintiffs, particularly as it relates to damages.  Plaintiffs are mostly restaurant and hospitality workers, and may be intimidated by the possibility of a trial or may not have the flexibility in their schedules to attend without severe financial consequences.   Moreover, Plaintiffs would have to overcome Louie's defenses, including that Class Members did not work nearly as many hours each week as they allege, and that the payroll records accurately reflect the total amount of hours worked. While Plaintiffs

believe that they could ultimately establish both liability and damages, this would require significant factual development.   Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.   The proposed settlement alleviates these uncertainties.  This factor therefore weighs in favor of approval.

### 6.   Risks Involved in Maintaining the Class Through Trial (*Grinnell* Factor 6)

The risk of class certification is also present.  Defendants would most likely oppose should Plaintiffs submit a Motion for Class Certification. Moreover, even if Plaintiffs were to succeed in such motion, Defendants would likely challenge the Court's determination. Settlement eliminates the risk and delay inherent in this process. As such, this factor weighs in favor of approval.

### 7.   Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7)

While it is not clear whether Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).  Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

### 8.   The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

Defendants have agreed to settle this case for a substantial amount, $170,000. The amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs overcame motions to oppose the class or collective, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186

(quoting *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164,178 (S.D.N.Y. 2000)).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Here, the settlement provides much more than "a fraction of the potential recovery." Each Class Member will receive some of the wages they are allegedly owed, based upon the number of weeks they worked during the relevant period.  Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

The *Grinnell* factors weigh in favor of issuing preliminary approval of the settlement.  In the event that a substantial number of objectors come forward with meritorious objections, the Court can reevaluate its determination.  Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## V.     THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE

The Proposed Notice and Claim and Release Form, which are attached to the Ambinder

Dec. as Exhibit B, complies with due process and Federal Rule of Civil Procedure 23.  Notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)      the nature of the action;
> (ii)     the definition of the class certified;
> (iii)    the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Proposed Notice satisfies each of these requirements.  The Notice also describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing.  Courts have approved class notices even when they provided only general information about a settlement.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"); *see also Johnson v. Brennan,* No. 10 Civ. 4712, 2011 WL 4357376 at *3 (S.D.N.Y. Sept. 16, 2011). The detailed information in the Proposed Notices far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B).

The Settlement Claims Administrator will take reasonable steps to obtain the correct addresses of any Class Member whose notice is returned as undeliverable and will attempt re-mailing.  *See* Ex. A, Settlement Agreement.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their

Motion for Final Approval of the FLSA Collective Action Settlement, and for Preliminary Approval of the Class Action Settlement and enter the Proposed Order.

Dated: December 16, 2016
      New York, New York

                         /s/ Lloyd R. Ambinder
                         Lloyd R. Ambinder
                         VIRGINIA & AMBINDER LLP
                         40 Broad Street, 7th Floor
                         New York, New York 10006

                         Jeffrey K. Brown
                         Michael A. Tompkins
                         LEEDS BROWN LAW, P.C.
                         One Old Country Road, Suite 347
                         Carle Place, New York 11514

                         *Attorneys for Plaintiffs*