UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MICHAEL SPAGNUOLI and JOSEPH VESELAK,
individually and on behalf of other persons similarly
situated who were employed,

                                        Plaintiffs,

-against-

LOUIE'S SEAFOOD RESTAURANT, LLC and/or any
other entities affiliated with, controlling, or controlled by
LOUIE'S SEAFOOD RESTAURANT, LLC, and/or
MARTIN PICONE and MICHAEL GUINNANE,

                                       Defendants.

No.: 13-CV-4907
(JMA)(ARL)

---

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF THE PROPOSED SETTLEMENT**

**VIRGINIA & AMBINDER, LLP**
Lloyd R. Ambinder, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
Tel:    (212) 943-9080
lambinder@vandallp.com

&

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown, Esq.
Michael Tompkins, Esq.
One Old Country Road, Suite 347
Carle Place, New York 11514
Tel:    (516) 873-9550
jbrown@leedsbrownlaw.com

*Attorneys for Plaintiffs and the Settlement Class*

## INTRODUCTION

Plaintiffs submit this memorandum of law in support of their unopposed motion for final approval of the proposed settlement as set forth in the Settlement Agreement and Release (hereinafter the "Agreement"). *See* Exhibit A. Specifically, Plaintiffs seek an order (1) approving the settlement as fair, reasonable, and adequate for both Rule 23 Class Members and FLSA Opt-ins, (2) binding all Rule 23 Class Members who have not timely opted out to the Released State Law Claims as set forth in the Agreement, and (3) dismissing the Litigation with prejudice.

On Sept. 30, 2017, this Court granted preliminary approval of the settlement as set forth in the Agreement, directing that notice be distributed to Class Members, and setting the date for the final fairness hearing. *See* Preliminary Approval Order, Docket No. 105. Pursuant to that Order and the Agreement, Class Members have been notified of the terms of the settlement, the monetary relief, and their right to opt out of or object to the settlement. As a result of that process, Plaintiffs respectfully request that the Court issue a final approval order, authorizing the distribution of settlement proceeds after Defendants have funded such amounts, and dismissing the case with prejudice as provided below. For the reasons stated below, it is respectfully submitted that this Court should grant final approval.

## PROCEDURAL BACKGROUND

### I.     The Litigation

This is an action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§207 and 216(b); New York Labor Law § 190 *et seq.*; New York Labor Law §§ 633 and 650 *et seq.*; 12 New York Codes, Rules, and Regulations (hereinafter referred to as "NYCRR") §§ 146-1.2, 146.3; to

recover unpaid wages allegedly owed to Plaintiffs Michael Spagnuoli and Joseph Veselak, ("Named Plaintiffs") and all those similarly-situated (collectively "Plaintiffs"). Plaintiffs alleged that Defendants engaged in a policy and practice of failing to pay compensation, fundamentally stemming from off-the-clock work performed by employees. A second action was filed in New York State Supreme Court, Nassau County, alleging violations of § 196-d of the Labor Law, captioned Veselak v. Louie's Seafood Rest. LLC, Index 603267/2015 (Sup. Ct. Nassau Cty.). The proposed resolution addresses claims asserted in both this action and the other pending action in Nassau County. *See* Doc. No. 46, as filed via NYSCEF in the Nassau Action. The court in the Nassau County action issued a stay in that proceeding, pending resolution of the matter here.

## II.      Investigation and Discovery

Before entering into the Agreement, Class Counsel conducted an investigation of Defendants' business practices, including consulting with Plaintiffs and Class Members, engaging in discovery by reviewing essential documents related to the claims, including pay records, time records, tip records, and other restaurant related documents, participating in multiple in-person and telephonic settlement conferences, drafting and responding to discovery for Opt-in Plaintiffs, assessing measures of damages, and weighing Defendants' affirmative defenses. Tompkins Dec. ¶ 5-10. Importantly, Class Counsel spoke to many Class Members, obtained employment records from Class Members, and evaluated the nature of Defendants' business and pay practices at their restaurant. Throughout discovery during 2014, 2015, and 2016, Plaintiffs' counsel was able to evaluate the ultimate merits of the case, the level of interest for participation by Class Members, and the risks of continuing litigation. Before finalizing depositions and a forensic review of Defendants' electronic point of sale system, the parties reached a proposed resolution.

III.        **Settlement Negotiations**

As a result of the discovery process, both formally and informally, the parties began a dialogue for potential class-wide resolution. Over several months, the parties engaged in numerous telephonic conferences and conducted in-person settlement discussions. During these discussions, the parties weighed the risks and circumstances associated with prosecuting Plaintiffs' claims, the potential certification of a Rule 23 class action, the potential for decertification of the collective pursuant to § 216(b), and the strength of Defendants' defenses. Ultimately, the parties agreed to attempt to resolve the case on a class-wide basis.

During the course of multiple settlement discussions, the parties were able to reach terms and a basis structure for a settlement agreement that would resolve all alleged claims for all Class Members, across the two litigations[1]. Over the course of the next several months, the parties drafted and executed the Agreement, which included the agreed upon Notice, Claim Forms, a proposed order, and other supporting exhibits for effectuating the Agreement. *See* Ex. A.  After resubmitting and adjusting various aspects of the settlement to comply with the Court's directives, the Court ultimately granted preliminary approval of the settlement to allow Class Members to participate, object, opt out, or otherwise be heard about the proposed resolution. *See* Dkt Nos. 102-105.

**SETTLEMENT PROCEDURE AFTER PRELIMINARY APPROVAL**

I.        **Notice Distribution**

---

[1] *See* <u>Veselak v. Louie's Seafood Rest. LLC</u>, Index 603267/2015 (Sup. Ct. Nassau Cty.)

4

Pursuant to this Court's Sept. 30, 2017 Order, preliminarily approving the settlement, the Court-approved Notice of Class and Collective Action Lawsuit and Fairness Hearing ("Notice"), and the Claim Form and Release were distributed by first class mail on Oct. 30, 2017 to 1,212 Class Members. *See* Kline Dec., attached to the Tompkins Dec. as **Exhibit B**, ¶ 8 (detailing notice as effectuated by the Settlement Claims Administrator, Simpluris, Inc.) On Oct. 30, 2017, Simpluris conducted the mailing of Notice and Claim Forms to 1,212 Class Members via first class mail. Ultimately, 101 were returned as undeliverable, after a remailing was attempted and 135 packets were re-mailed to updated addresses.  Kline Dec., ¶ 9.

## II.   Participating Claimants

With respect to the Settlement Agreement, the eligible employees include three categories of workers who were to be entitled different shares based on their job classification and the time period in which they worked: (1) Front of the House ("FOH") workers who performed work for Louie's at any time from Sept. 4, 2007 through Dec. 31, 2013, as waiters, servers, bartenders, bussers, runners, and in other positions that customarily receive tips, will be eligible to receive $25.00 per week for each week worked in such capacity during the Relevant Period (defined as Sept. 4, 2007 through Sept. 30, 2017, preliminary approval date); (2) Back of the House ("BOH") workers who performed work for Louie's at any time from Sept. 4, 2007 through Dec. 31, 2013, as chefs, cooks, dishwashers, and in other positions that customarily do not receive tips will be eligible to receive $36.25 per week for each week worked in such capacity during the Relevant Period; and (3) all FOH or BOH Louie's employees who performed work from Jan 1. 2014 to Sept. 30, 2017, will be eligible to receive a flat rate of $50.00 in consideration for a release of FLSA and State Law Claims and Release Class Claims[2]. As submitted today, these previously

---

[2] As a result of the Agreement and after a calculation total was estimated by the Settlement Claims Administrator, the parties agreed to a reduction of attorney's fees, negotiated a reduction of Settlement

proposed amounts were reduced pursuant to § 3.2(E) of the Agreement, to ensure that Defendants were not required to fund more than $170,000.

As of today (Jan. 29, 2017), a total of 144 claim forms were filed with the Settlement Claims Administrator and all of which have been accepted as Authorized Claimants, which is approximately 11.88% of Class Members. *See* Kline Dec. ¶ 10.

## ARGUMENT

### I.     The Settlement Class Meets the Legal Standard for Class Certification.

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified.  *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). On Sept. 30, 2017, the Court preliminarily certified the settlement class consisting of all individuals who performed work for Defendants as a FOH worker, including waiters, servers, bartenders, bussers, runners, and other positions that customarily receive tips or a BOH worker, including chefs, cooks, dishwasher, and other positions that customarily do not receive tips and hereby assert a claim under NYLL and/or FLSA in the State of New York from Sept. 4, 2007 through Sept. 30, 2017. The Court should now grant final certification because the settlement meets all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  Plaintiffs respectfully request that the Court certify the Rule 23 Class for purposes of effectuating the settlement.

Under Rule 23, a class action may be maintained if all prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class;

---

Claims Administration fees, and agreed to reduce the Authorized Claimants amount to $87,500. See infra Section III.

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).   Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *Id.* at (b)(3).

### A.     Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members . . . ."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  The numerosity requirement is easily satisfied because there were approximately 1,212 Class Members on the Class Member Mailing List provided by Defendants.

### B.     Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005).   There must be a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at 181.

Named Plaintiffs and Class Members worked as FOH workers and BOH workers. They all allege that Louie's Seafood Restaurant failed to pay them and other similarly situated service

workers for all earned wages, including overtime and off-the-clock work, as well as unpaid gratuities in violation of the FLSA and the Labor Law.  The Named Plaintiffs alleged to have each performed work that benefited Louie's Seafood Restaurant.  Plaintiffs alleged that Defendants uniformly enforced these unlawful policies and practices against service workers at Defendants' location. *See* Dkt. Nos. 50-5 through 50-8. Defendants deny these allegations and maintain that their policies and procedure were lawful.  It is therefore Plaintiffs' position that the harm that the Named Plaintiffs allegedly suffered in this case is identical to the harm allegedly suffered by all members of the class. These common issues satisfy the commonality requirement.

### C.    Typicality

Typicality is also satisfied because "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted).  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182.  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, Louie's Seafood Restaurant failed to pay all earned wages, tips and gratuities to Named Plaintiffs and Class Members for the work they performed, namely by requiring Named Plaintiffs and Class Members to work off the clock and by retaining gratuities owed to service workers. *See e.g.*, Dkt. Nos. 50-5 through 50-8. Plaintiffs allege they were subject to the same company policies and practices, and Plaintiffs claim the same injury as do Class Members – that Defendants failed to pay them all earned wages and all earned gratuities. Because Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of Class

Members' claims, Plaintiffs satisfy the typicality requirement. *See* Doc. No. 46, as filed in the state action via NYSCEF, ("While not identical, the state and federal claims are sufficiently similar and basically arise out of the same actionable wrong, such that, in the interests of judicial economy, plaintiffs' alleged Labor Law § 196-d claim could most efficiently be resolved in the federal action – particularly given the fact that defendants in the federal action have turned over significant discovery on the issues …").

### D.    Fair and Adequate Representation

Named Plaintiffs Veselak and Spagnuoli are adequate class representatives because they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).   "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members."  *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted).

There is no evidence that the Named Plaintiffs' and class members' interests are at odds. *See Beckman v. KeyBank, N.A.*, No. 12 Civ. 7836, 2013 WL 1803736, at *3 (S.D.N.Y. 2013) (finding adequacy requirement met where there was no evidence that plaintiffs' and class members' interests were at odds); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (same).  Additionally, to the best of Class Counsel's knowledge, there is no competing litigation already commenced by any member of the class.  Tompkins Dec. ¶ 18. Class

Counsel also meet the adequacy requirement as they are experienced litigators who have successfully represented classes in numerous class actions and have considerable employment law experience. Tompkins Dec. ¶ 21-22; *see also*, *Grant v. Warner Music Group Corp.*, Case No. 13-CV-4449(PGG) (S.D.N.Y. March 11, 2016); *Ojeda v. Viacom Inc.,* Case No. 13-cv-5658(GWG) (S.D.N.Y. Dec. 2, 2015) (obtaining final approval of the settlement on behalf of thousands of unpaid interns); *Vitetta v. Siriux XM Radio Inc.*, Case No. 14-2926(VEC) (S.D.N.Y. Dec. 18, 2015); *Arias v. Clear Channel Broadcasting, Inc.*, Case No. 14-CV-5088(SN) (S.D.N.Y. Feb. 2, 2016); *Tart v. Lions Gate Entm't Corp.*, 2015 U.S. Dist. LEXIS 139266 (S.D.N.Y. Oct. 13, 2015) ("Virginia & Ambinder, LLP, and Leeds Brown Law, P.C. are experienced and well-qualified employment and class action lawyers with expertise in prosecuting and settling labor law cases. The substantial work that Plaintiffs' counsel has performed in investigating, litigating and reaching a settlement in this case demonstrates their commitment to the class and representing the class' interests, as well as their general ability to conduct this litigation…As noted above, Virginia & Ambinder, LLP, and Leeds Brown Law, P.C. have extensive experience in labor law class actions and have devoted considerable time and effort to litigating and settling this action on behalf of the class.").

### E. Predominance and Superiority

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini*

*v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Class Members' common factual allegations and legal theory – that Louie's Seafood Restaurant failed to pay all earned compensation, namely all earned wages and gratuities, to their employees – predominate over any variations among Class Members. Moreover, settlement damages are uniformly calculated by applying a mechanical formula to the three distinct subclasses. *See* Ex. A, § 3.2. Class adjudication of this case is also superior to individual adjudication because it will conserve judicial resources and avoid inconsistent judgments. Further, given the expense of litigation and the relatively small size of numerous individual claims, many members of the class simply could not afford to pursue redress absent class treatment. Given these facts, a class action is superior to other available methods of adjudicating this controversy.

In light of the above, certification of the Rule 23 Class for purposes of effectuating the settlement is proper. *Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036 (S.D.N.Y. Aug. 11, 2015) (Pitman, J.) (court found all requirements of Rule 23 satisfied for settlement purposes in unpaid intern settlement); *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382 (S.D.N.Y. July 9, 2015) (Schofield, J.) (same); *Eliastam v. NBC Universal Media, LLC*, No. 13 Civ. 4634 (S.D.N.Y. May 23, 2015) (Ellis, J.) (same).

## II.      The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to ensure that the proposed resolution is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).  Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits.  *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.").  Procedural and substantive considerations support approving the proposed settlement.

Additionally, several settlements with similar settlement structures, similar procedural mechanisms, and similar claims have been approved by courts in this jurisdiction. *See e.g. Kingborn Morris v. Alle Processing*, 08-CV-4874 (E.D.N.Y. Sept. 30, 2017); *Tart v. Lions Gate Entm't Corp.*, 2015 U.S. Dist. LEXIS 139266 (S.D.N.Y. Oct. 13, 2015), among others.

## A.     The Proposed Settlement Is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations, after experienced counsel had evaluated the merits of Plaintiffs' claims through meaningful and substantive discovery – namely document exchange.  *See e.g. Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato,* 236 F.3d at 85.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*,

No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Here, the settlement was reached after Class Counsel conducted thorough investigations and evaluated the claims and defenses, through discovery, after Class Counsel consulted with numerous witnesses, and after extensive arm's-length negotiations between the parties. These arm's-length negotiations lasted for months and involved counsel well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *McMahon*, 2010 WL 2399328, at *4); *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382 (S.D.N.Y. July 9, 2015) (Schofield, J.) (same).

As detailed in the Notice section, this settlement is procedurally fair because Class Members have been provided with written Notice of the settlement and the affect that it will have on their legal rights. Each has been afforded the opportunity to be heard, to raise concerns, to address Class Counsel, to speak at the Fairness Hearing, or otherwise demonstrate issues that they may have with the settlement. To date, none have done so. *See* Kline Dec., ¶ 14; Tompkins Dec. ¶ 18.

### B.    The Proposed Settlement Is Substantively Fair.

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the

best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* at 463. All of the *Grinnell* factors weigh in favor of final approval of the settlement.

### 1.   Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell Factor 1*)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with 1,212 Class Members and claims under federal and state law, many of which would require testimony from Class Members to successfully litigate.

Further litigation here would cause additional expense and delay. Plaintiffs would likely file a motion for class certification, and Defendants would oppose it and/or move for decertification of the collective class. In addition, the parties likely would file cross-motions for summary judgment. *See e.g., Mark v. Gawker Media LLC*, No. 13-cv-4347 (AJN), 2016 U.S. Dist. LEXIS 41817, at *1 (S.D.N.Y. Mar. 29, 2016). If the Court denied the motions, a fact-intensive trial would necessarily follow. A trial would be lengthy, complex, and would consume tremendous time and resources for the Parties and the Court, based on the off-the-clock work and the nature of the unremitted gratuity claim. Any judgment would likely be appealed, further extending the litigation. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of approval. *See Eliastam v. NBC Universal Media, LLC*, No. 13 Civ. 4634 (S.D.N.Y. May 23, 2015) (Ellis, J.) (court found that the uncertainty and delay of further litigation supported the reasonableness and

14

adequacy of the settlement).

## 2.  <u>The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)</u>

The reaction of the class to the settlement is a "significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002).   The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008). To date, the Settlement Claims Administrator has not received any objections and only one individual has requested to be excluded from the settlement. *See* Kline Dec. ¶ 13.

Here, the Court-approved Notices sent to Class Members included an estimate of each Class Member's award, the allocation formula, informed Class Members of their right to object to or exclude themselves from the settlement and instructions on how to do the same.  That 144 claim forms were returned and that only one Class Members elected to opt-out of the settlement shows strong support for the settlement and supports that the Notice adequately informed Class Members of their rights. *See Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382 (S.D.N.Y. July 9, 2015) (Schofield, J.) (granting final approval where no interns objected to settlement and only 24 class members opted-out); *Eliastam v. NBC Universal Media, LLC*, No. 13 Civ. 4634 (S.D.N.Y. May 23, 2015) (Ellis, J.) (granting final approval where six interns objected to settlement and only 37 class members opted-out); *Davis v. J.P. Morgan Chase & Co.*, No. 01 Civ. 6492, 2011 WL 4793835, at *3 (W.D.N.Y. Oct. 11, 2011) (granting final approval and noting "very little negative reaction by class members to the proposed settlement" where 11 out of 3,800 class members opted out, and 3 objected); *Willix*, 2011 WL 754862, at * 4 (granting final approval of the settlement where 7 out of 2,025 class members objected and 2 opted out); *Bellifemine v.*

*Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at * 3 (S.D.N.Y. Aug. 6, 2010) (granting final approval where there were no objections but 28 of 5,262 opted out, noting that "[a] small number of objections is convincing evidence of strong support by class members"); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out, noting that "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).  This factor weighs in favor of final approval.

> **3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)**

Although preparing this case through trial would require hundreds of hours of discovery for both sides, the parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).

The Parties' discovery here meets this standard.  Plaintiffs' Counsel conducted an investigation and legal research on the underlying merits of the potential class claims, the likelihood of obtaining liquidated damages and the proper measure of damages. They also researched Defendants' likely affirmative defenses.  After filing, Plaintiffs' Counsel conducted further investigations and discovery including, but not limited to, interviewing Plaintiffs and Class Members, participating in paper discovery, reviewing hundreds of pages of records from Defendants, and achieving conditional collective certification via motion practice. Plaintiffs' Counsel have reviewed data and hundreds of documents produced by Defendants or Class Members.  Taken together, this discovery was substantial. Therefore, this factor favors preliminary approval.  *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding that "Plaintiff's Counsel did substantial work identifying, investigating,

prosecuting, and settling Plaintiff's and the class members' claims.").

### 4.   Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiffs' Counsel believe their case is strong, it is subject to considerable risk. Defendants would likely move to decertify the collective and vigorously oppose certification of a Rule 23 Class. Additionally, the claims themselves may be subject to a motion for summary judgment by Defendants, both for the Named Plaintiffs as well as for any collective or class. While Plaintiffs' Counsel believe that they could ultimately establish both liability and damages, this would require significant factual development, participation, and motion practice.

Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues for the collective and class, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates these uncertainties, and requires minimal participation for most Class Members to collect.  This factor therefore weighs in favor of approval. See *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382 (S.D.N.Y. July 9, 2015) (Schofield, J.) (court acknowledged "significant risk from the uncertainty in the law with respect to how determine whether unpaid interns are entitled to compensation…."); *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks."); *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969) ("If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."); *Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).

### 5.   Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of obtaining class certification and maintaining it through trial is also present.  The Parties anticipate that a determination on class certification would be reached only after further

discovery and exhaustive briefing.  In opposing class certification, Defendants would likely argue that individualized questions preclude class certification, as to some or all subclasses.  Settlement eliminates the risk, expense, and delay that permeates such processes.  In addition, Defendants would likely move to decertify that this case would no longer proceed on behalf of a collective pursuant to 29 U.S.C. § 216(b).  Settlement eliminates the risk and delay inherent in this process. As such, this factor weighs in favor of approval.

6. **Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7)**

While it is not clear whether Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).  Thus, this factor is neutral and does not preclude the Court from granting final approval.

7. **The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

Defendants have agreed to pay a substantial amount, $170,000.00, to Plaintiffs and Authorized Claimants. This represents considerable value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs overcame motions to certify any class or Defendants' likely attempt to decertify the collective, succeeded on all claims at trial, and survived an appeal.

Whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (*quoting In re Austrian*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman*

*v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where the "best possible recovery would be approximately $121 million").

Here, the settlement provides much more than "a fraction of the potential recovery."  The $170,000 Final Settlement Amount represents a settlement payment to participating claimants based on their weeks worked and the timeframe of their employment, less applicable fees, costs and tax withholdings. As originally proposed, this number represents the following for Subclass 1: each FOH Authorized Claimant will receive $25.00 per week for each week worked during the Relevant Period; Subclass 2: each BOH Authorized Claimant will receive $36.25 per week for each week worked during the Relevant Period; Subclass 3: Class Members who performed work from January 1, 2014 to September 30, 2017 shall only be entitled to collect a flat rate of $50, in consideration for a release of FLSA and State Labor Law Claims. The parties felt this was a reasonable compromise. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.  *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382 (S.D.N.Y. July 9, 2015) (Schofield, J.) (court acknowledged "significant risk from the uncertainty in the law with respect to how determine whether unpaid interns are entitled to compensation….").  *See also Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036 (S.D.N.Y. Aug. 11, 2015) (Pitman, J.); *Eliastam v. NBC Universal Media,*

*LLC*, No. 13 Civ. 4634 (S.D.N.Y. May 23, 2015) (Ellis, J.).

Based on § 3.2(E), Defendants were only required to make payments for up to $170,000. *See* Ex. A. As discussed below, the proposed amounts were reduced, along with a substantial reduction in attorney's fees and claims administrator costs.

### III.      **Final Settlement Figures**

Plaintiffs submit that the proposed settlement is fair and reasonable, both procedurally and substantially, as detailed above. Therefore, Plaintiffs ask that the Court approves the settlement figures as set forth below:

| | |
|---|---|
| Final Settlement Amount | $170,000 |
| Attorney's Fees and costs | $60,000 |
| Settlement Claims Administrator | $15,000 |
| Service Awards | $7,500 |
| Amount Available for Claimants | $87,500 |

In order to stay at or below $170,000 as the Final Settlement Amount, Class Counsel, the Settlement Claims Administrator, and Authorized Claimants needed to take a slight reduction in the amounts they were allocated to receive – subject to the Court's ultimate approval of these proposed reductions. *See* Ex. A, § 3.2(E). First, Class Counsel has agreed to take $40,000 less than what was allocated in the Agreement in the original preliminary approval motion, because the participation level came in higher than expected. Tompkins Dec. ¶ 15. Second, the Settlement Claims Administrator also agreed to reduce their fees and costs to $15,000. Therefore, based on § 3.2(E) of the Agreement, the Settlement Claims Administrator performed calculations that ensure

that $87,500 was allocated to the Class Members.  As a net result, the three categories of workers will receive slightly less, or approximately 73.5 % of the amount owed under the original formula. Meanwhile, Class Counsel took 60% of what it originally requested, and Simpluris agreed to take 52% of their anticipated total cost.

## IV.      Final Certification of the FLSA Collective

Plaintiffs also request that the Court grant final certification for the settlement FLSA Collective, consisting of all individuals who performed work for Defendants at any time from Sept. 4, 2007 through Sept. 30, 2017. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective action settlements do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement. Instead, courts approve FLSA settlements as long as they are reached as a result of contested litigation to resolve *bona fide* disputes. *See McMahon*, 2010 WL 2399328, at *6.

This settlement resolves a *bona fide* dispute and was reached after vigorous arm's-length settlement negotiations. Further, this Court has already held that the defined collective is proper. *See* Dkt. No. 62; s*ee also Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382 (S.D.N.Y. July 9, 2015) (Schofield, J.) (court approved FLSA settlement and certified collective of unpaid interns); *Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036 (S.D.N.Y. Aug. 11, 2015) (Pitman, J.) (same). As such, the settlement collective should be granted final approval.

## V.        Service Awards

Plaintiffs also request that the Court approve a total of $7,500 in service awards for Named Plaintiffs and individuals that aided in the litigation process, namely by providing declarations in support of § 216(b) certification and for responding to discovery before a resolution was reached. As service awards are regularly awards to individuals that aid in the resolution of a case or take a risk in being a party to an action. *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011).

Here, Plaintiffs request $7,500 for Plaintiff Veselak, who was a Named Plaintiff and was instrumental in the prosecution of this action, Plaintiff Spagnuoli, who lent his time and name to this litigation, Opt-In Plaintiff Jackson Weber, who provided a sworn statement in support of Plaintiffs' prior motions and aided Class Counsel in the discovery process, Opt-in Plaintiff Gunning, who helped throughout the litigation process, and Opt-in Plaintiff Speina for providing information throughout discovery, including concerning the arbitration agreements.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) approve the settlement as fair, reasonable, and adequate for both Rule 23 Class Members and FLSA Opt-ins, (2) bind all Rule 23 Class Members who have not timely opted out to the Released State Law Claims as set forth in the Agreement, and (3) dismiss the Litigation with prejudice.

Dated: New York, New York
        January 29, 2018

Respectfully submitted,

LEEDS BROWN LAW, P.C.


_____/s/_____
Michael Tompkins, Esq.
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550
mtompkins@leedsbrownlaw.com


VIRGINIA & AMBINDER, LLP
Lloyd Ambinder, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
Tel:     (212) 943-9080
lambinder@vandallp.com

*Attorneys for Plaintiffs and the Settlement Class*