UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MICHAEL SPAGNUOLI, KELLIE SHEA,
and JOSEPH VESELAK, *individually and on behalf of all other persons similarly situated*,

                               Plaintiffs,

           -against-

LOUIE'S SEAFOOD RESTAURANT, LLC
and/or any other entities affiliated with,
controlling, or controlled by LOUIE'S
SEAFOOD RESTAURANT, LLC;
MARTIN PICONE; and MICHAEL
GUINNANE, LOUIE'S SEAFOOD
RESTURANT, LLC,

                              Defendants.
----------------------------------------------------------------X

For Online Publication Only

**FILED**
**CLERK**

12:10 pm, Mar 04, 2022

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

<u>**ORDER**</u>
13-CV-4907 (JMA) (ARL)

**AZRACK, United States District Judge:**

This wage-and-hour suit concluded with a class settlement. After the Court granted final approval to the class settlement, Class Member Musa Liman ("Liman"), who did not opt out, sought to pursue wage-and-hour claims on an individual basis. Pending before the Court is a motion by Defendants to enjoin Liman's pursuit of those claims and a motion by Liman to belatedly opt out of the class settlement. The Court denies Liman's motion because he has not established excusable neglect. The Court denies Defendants' motion seeking to enjoin Liman from pursuing claims because the parties agreed to litigate disputes between them in arbitration and the substantive issues raised by Defendants' motion can be addressed by the arbitrator.

1

# I. BACKGROUND

## A. Litigation and Settlement of this Class and Collective Action

In September 2013, Named Plaintiffs Michael Spagnuoli, Kellie Shea, and Joseph Veselak, filed a putative class and collective complaint against Defendants Louie's Seafood Restaurant, LLC ("Louie's"), Martin Picone; and Michael Guinnane. (Complaint, ECF No. 1 at 1.) The Named Plaintiffs alleged that Defendants violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by failing to pay overtime compensation. (Id.) In March 2015, Shea voluntarily withdrew her claims after it was determined that she had submitted fraudulent documents in discovery. (ECF No. 62 at 2 n. 1.)

On December 29, 2015, Magistrate Judge Lindsay conditionally certified a collective action under the FLSA for "waiters and servers with respect to overtime claim." (Order on Motion to Certify FLSA Collective Action, ECF No. 62 at 11.) The notice of the collective action ("Collective Action Notice") was mailed to the potential opt-in employees on January 28, 2016 in order to inform them notice of the suit and give them an opportunity to opt into the collective action. (ECF No. 70.) That same day, in accordance with Judge Lindsay's order, Defendants also posted the Collective Action Notice on a corkboard outside the employee's entrance to Louie's kitchen. (ECF No. 62 at 14, ECF No. 70.) The Collective Action Notice remained posted on the corkboard through September 27, 2018. (Picone Aff. ¶ 9, ECF No. 124; Graff Aff. Ex. C (pictures of posted notice).)[1] This was a conspicuous location that any employee had to pass by while at work. (Id.)

---

[1] In connection with the pending motions before the Court, Defendants originally provided an affidavit from Martin Picone dated April 23, 2021. In response to that affidavit, Liman's counsel filed a pre-motion conference letter concerning a proposed motion to strike Picone's affidavit under Federal Rule of Civil Procedure 12(f) because it allegedly contained scandalous and defamatory allegations about Liman's counsel. Defendants subsequently withdrew the disputed affidavit and filed a revised version of Picone's affidavit dated April 30, 2021, (ECF No. 124.) Accordingly, the Court grants the motion to strike, (ECF No. 123), and directs the Clerk of Court to seal Picone's affidavit dated April 23, 2021, (ECF No. 122–1.)

Approximately twenty individuals filed consents to join the collective action.

In August 2015—prior to Judge Lindsay's ruling on the conditional certification motion—a number of Defendants' employees had signed arbitration agreements. The Named Plaintiffs disputed whether these agreements were proper and valid. (ECF No. 68.) After the Named Plaintiffs filed a motion to strike these arbitration agreements, Defendants agreed to waive the enforcement of these arbitration agreements for any current or former waiter or server who opted-in to the conditional class. (ECF No. 68.) In light of that waiver, on February 5, 2016, Judge Lindsay permitted the Named Plaintiffs to send a second copy of the Collective Action Notice to any employee who signed an arbitration agreement. (ECF No. 68.)

After undertaking additional discovery, the parties agreed on a class-wide settlement and, on December 16, 2016, the Named Plaintiffs filed a motion for preliminary approval of the class settlement. (ECF No. 100.) At the Court's urging, the parties made various changes to the settlement agreement and the class notice. (See ECF Nos. 101–104.) On September 30, 2017, the Court preliminarily approved the parties' proposed settlement (the "Class Settlement") and the notice (the "Class Action Notice") and scheduled a final fairness hearing for February 2, 2018. Pursuant to the Court's September 30, 2017 Order, the Class Action Notice informed the Class Members that they had until December 29, 2017 to opt-out of the settlement, object to the settlement, or file a claim form.

On October 30, 2017, the Class Action Notice was mailed by Simpluris, the claims administrator, to 1,212 class members. (ECF No. 112-1 at 5.) 101 notices were returned as undeliverable and 135 notices were re-mailed to updated addresses. (Id.) 144 employees, which constituted 11.88% of the Class, returned claim forms. (Id. at 6.) Only one Class Member opted

3

out of the settlement and no Class Members objected to the settlement. (Id. at 15.) No Class Members appeared at the fairness hearing.

On September 27, 2018, the Court granted final approval to the Class Settlement. The Order provides that "the Court will retain jurisdiction over the case and the Agreement." (Id.)

**B. Class Member Liman and the Post-Judgment Litigation Concerning Liman**

Liman is a former employee of Louie's, who is a member of the Class. As explained infra, months after the Court granted final approval to the Class Settlement, Liman and his attorneys contacted defense counsel in an effort to pursue alleged wage-and-hour claims. Liman now seeks to opt out of the Class Settlement, contending that he never received the Class Action Notice.

Liman initially worked at Louie's from June 2014 to November 2015. (Picone Aff. ¶¶ 2, 10 & n. 1; Graff Aff., Exs. A, B.) Liman then returned to work at Louie's in November 2016 and worked there until September 16, 2018. (Id.)

During his initial period of employment at Louie's, Liman executed an arbitration agreement in approximately August 2015. Liman's initial period of employment with Louie's ended on November 29, 2015.

Records indicate that Liman was mailed a copy of the Collective Action Notice on January 28, 2016. (Graff Aff., Ex. G; ECF No. 70.) Records also indicate that, shortly thereafter, Liman was sent a second copy of the Collective Action Notice because Liman was one of the employees who had signed a disputed arbitration agreement. (Graff Aff., Ex. H; ECF No. 68.) Liman asserts that he never received any mailings concerning the instant lawsuit and insists that he did not learn about this lawsuit until March 2019. (Liman Aff. ¶¶ 16–17.) It is undisputed that Liman never submitted a consent to opt-in to the collective action.

When Liman returned to work at Louie's in November 2016, he executed a second arbitration agreement (the "Arbitration Agreement.")  The Arbitration Agreement covers, with a few enumerated exceptions, all "employment-related claims" that either Liman or Louie's "ha[ve] or in the future may have against" each other. (Arbitration Agreement ¶ 2, ECF No. 116–2.) The Arbitration Agreement excludes any actions "seeking only declaratory and/or emergency, temporary or preliminary injunctive relief." (Id. ¶ 2.)  Under the Agreement, "[a]ny dispute as to arbitrability of a particular issue or claim pursuant to this Agreement is to be resolved in arbitration." (Id. ¶ 8.)

Michael McGlynn, the General Manager of Louie's, recalls having a short conversation with Liman about the instant lawsuit in the spring of 2017.  (McGlynn Aff. ¶ 2.)  After Liman began a discussion with McGlynn about the lawsuit, McGlynn instructed him to review the Collective Action Notice that was still posted in the restaurant for more information.  (Id. ¶¶ 2–3.)

In September 2017, the Court granted preliminary approval to the Class Settlement. Affidavits and a communication log from Simpluris show that Liman and the other Class Members were mailed the Class Notice on October 30, 2017.  (See ECF No. 116-5, ECF No. 116-6; ECF No. 112–4.)  Liman, who did not file a request to opt-out of the settlement, asserts that he never received the Class Action Notice.  (Liman Aff. ¶ 16.)

On September 16, 2018, Liman's employment with Louie's ended.  Two weeks later, the Court granted final approval to the Class Settlement.  On October 9, 2018, Liman filed a complaint with the New York State Department of Labor asserting that Louie's failed to pay him overtime. (ECF No. 121-1 at 1.)  In December 2018, Liman retained his present counsel, who concluded that Louie's may have violated the NYLL and the FLSA.  (ECF No. 121-2.)  In December 2018, Liman's counsel began preparing to file a complaint in the Eastern District.  (ECF No. 121-1 at 2.)

According to Liman's counsel, "in or around March 2019," counsel learned that Liman may have executed an arbitration agreement with Louie's. (ECF No. 121–3.) On March 12, 2019, Liman's counsel spoke with defense counsel over the phone "to ascertain the relevant facts." (ECF No. 121-3.) Later that day, defense counsel sent Liman's counsel a letter asserting that Liman's unpaid wage claims were barred by this Court's September 27, 2018 Order, which granted final approval to the Class Settlement. (Id.) Defense counsel included with this letter copies of the Court's Order and the arbitration agreement that Liman executed on November 14, 2016 when he returned to employment at Louie's.

On April 19, 2019, Liman's counsel responded to defense counsel's March 12 letter, asserting that Liman did not release his FLSA claims and offering to discuss a potential resolution of Liman's wage-and-hour and discrimination claims.[2]

On May 6, 2019, Defendants filed a letter motion with the Court asking that the Court enjoin Liman from filing any claim for "unpaid wages allegedly owed during the class period of September 4, 2007 through the date the Court approved the Agreement . . . since his claims were resolved, waived, and released pursuant to the Settlement Agreement and [the Court's September 27, 2018 Order]." (ECF No. 116.) Defendants also requested that they be awarded attorney's fees pursuant to Settlement Agreement, which "states that Defendants shall be entitled to make an application for attorneys' fees and costs" if any Class Member who has not opted out "commences an action . . . related to any" released claims. (Settlement Agreement § 4.1(I).)

On May 8, 2019, Liman filed a response. In the response, Liman argued that his failure to opt-out of the Class Settlement did not bar him from pursuing his FLSA claims because, according

---

[2] Liman asserts that this letter is inadmissible under Federal Rule of Evidence 408. The Court has only considered this letter for the limited purpose of identifying the timeline of events that preceded Liman's request to opt-out of the settlement.

6

to Liman: (1) FLSA claims cannot be released in an opt-out settlement under Rule 23; (2) the Settlement Agreement and other filings indicate that Liman "did not release his FLSA claims by not affirmatively opting into Spagnuoli." (ECF No. 117.) Liman also requested permission to file a motion to submit a belated opt-out form, claiming that he could establish excusable neglect for failing to opt-out earlier. Liman sought to opt out of the Class Settlement so that he could "pursue his FLSA claims for unpaid wages in an arbitral forum." (ECF No. 117 at 2.) Attached to this filing was an affidavit from Liman in which he: (1) denies receiving the Class Action Notice and any other mailings about this lawsuit; and (2) maintains that he first learned of this lawsuit and the Class Settlement from his attorneys in March 2019.

On March 31, 2021, the Court granted Liman leave to file a motion to submit a belated opt-out request. That motion, as well as Defendants' motion that seeks to enjoin Liman's from pursuing his alleged claims, are pending before the Court.

## II. DISCUSSION

### A. Liman's Motion to Opt-Out of the Class Settlement

Liman first requested to opt out of the Class Settlement more than sixteen months after the December 29, 2017 opt-out deadline. Liman asserts that the Court should grant his request because he has allegedly established exclusive neglect for not opting out in accordance the December 2017 deadline. The Court denies Liman's motion to opt-out of the settlement because he has not established excusable neglect.

7

### 1. Standard for Excusable Neglect

As the Second Circuit has explained:

> [A] class member seeking permission to opt out late must first demonstrate "excusable neglect" for his or her failure to comply with a fixed deadline. The determination whether a party's conduct constitutes "excusable neglect" is an equitable one that requires a court to consider all relevant circumstances. For that reason the notion is an "elastic concept." Excusable neglect may be found where the relevant circumstances reveal inadvertent delays, mistakes, or carelessness. Hence, it clearly is broad enough to encompass even those omissions caused by circumstances within the movant's control. To establish excusable neglect, however, a movant must show good faith and a reasonable basis for noncompliance. A court will also consider the degree of prejudice to the opposing party.

In re Painewebber Ltd. Partnerships Litig., 147 F.3d 132, 136 (2d Cir. 1998) (internal citations omitted). Other relevant factors include "the length of delay [and] its impact on judicial proceedings." Hanks v. Voya Ret. Ins. & Annuity Co., No. 16-CV-6399, 2020 WL 6538743, at *2 (S.D.N.Y. Nov. 6, 2020) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P., 507 U.S. 380, 395 (1993). While courts consider all relevant circumstances, the party's reason for delay is the "most important" factor. Shumsker v. Citigroup Glob. Markets Inc., 569 F. App'x 16, 18 (2d Cir. 2014).

With respect to prejudice, Defendants would obviously be prejudiced if Liman were permitted to opt out and pursue claims foreclosed by the Class Settlement. See Shumsker, 569 F. App'x at 19. The Court has also considered: (1) the impact on Liman, who will otherwise be bound to a settlement that precludes some or all of his claims; and (2) the fact that Liman is the only Class Member who has sought to opt out late. Given the above, the Court finds that, for Liman, this factor is, at best, neutral.

With the respect to the length of the delay, the relevant periods of delay here are extensive. Liman's request to opt out was first made: (1) more than 16 months after the December 2017 opt-out deadline; (2) more than seven months after the Court's September 27, 2018 Order granting

final approval to the settlement; (3) approximately five months after Liman retained counsel; and (4) almost two months after defense counsel's March 12 letter and discussion with Liman's counsel.

Liman contends that allowing him to opt out will have "minimal impact on judicial proceedings because Mr. Liman does not seek to reopen this action or to file another lawsuit." (ECF No. 121-1 at 4.)  The distinction Liman seeks to draw between litigation in arbitration and litigation in court is not persuasive.  In any even accepting Liman's argument on this particular factor, the Court would reach the same ultimate conclusion.

With respect to the issue of good faith, the Court assumes that Liman has acted in good faith and did not delay in order to gain a tactical advantage.  See Hanks, 2020 WL 6538743, at *4. 20).

With the above points in mind, the Court focuses below on the most important factor—Liman's purported reasons for delay, including his assertion that he did not receive a Class Action Notice in 2017 and did not learn of the Class Settlement and the opt-out requirement until March 2019.

### 2. Liman's Claim that He Did Not Receive the Class Action Notice in 2017 is Not Credible

Liman asserts that he was not aware of this lawsuit until March 2019 and that he did not receive the Class Action Notice and the two Collective Action Notices.  These claims are simply not credible in light of all the evidence before the Court.

As an initial matter, Defendants have offered sufficient to evidence to establish that they are entitled to a presumption of mailing and receipt, and Liman has failed to rebut that presumption.

"It is well settled that proof that a letter was mailed creates a presumption that the letter reached its destination and was actually received by the person to whom it was addressed." Orix

9

Credit All. v. Phillips-Mahnen, Inc., No. 89-CV-8376, 1993 WL 183766, at *7 (S.D.N.Y. May 26, 1993) (collecting cases).  "Once proof of mailing exists, mere denial of receipt is insufficient to overcome the presumption of receipt, and the burden falls upon the addressee to present sufficient evidence to overcome the presumption and establish nonreceipt."  Id.  "Although the mere denial of receipt does not rebut the presumption, testimony denying receipt in combination with evidence of standardized procedures for processing mail can be sufficient to rebut the presumption."  In re Robinson, 228 B.R. 75, 82 (Bankr. E.D.N.Y. 1998).

Liman does not dispute that there is "a presumption of receipt of mailing."  (ECF No. 126 at 7.)  Nor does Liman dispute that the evidence offered by Defendants is sufficient to establish the presumption.  Instead, Liman insists that he has sufficiently rebutted the presumption with his affidavit in which he both denies receipt of the Class Action Notice and describes the practice of receiving and distributing the mail at his residence.  (Liman Aff. ¶¶ 2–17.)  However, Liman's proof—even if accepted on its face—is insufficient to rebut the presumption.  Four adults, including Liman himself, handle and distribute the mail at his residence.  (Id. ¶¶ 7–9.)  While Liman's affidavit describes the purported practices of both himself and the other three adult residents of the house concerning mail, Liman has not provided affidavits from any of the other three residents of the house.  Additionally, while Liman personally denies receipt of the Class Action Notice, there is no admissible proof from the three other adult residents denying receipt of the Class Action Notice or any other mailings concerning this litigation.  While Liman's affidavit asserts that the three other adult residents "confirmed that they did not receive" any mail concerning this litigation, this portion of Liman's affidavit is inadmissible hearsay.  (Liman Aff. ¶ 18.)  Liman's proof is insufficient to rebut the presumption of mailing and receipt.

Moreover, even if the Court were to disregard this presumption and consider all of the factual assertions in Liman's affidavit, the claims in Liman's affidavit—namely, that he did not receive the Class Action Notice and the two Collective Action Notices and was wholly unaware of the instant litigation until March 2019—are simply not credible.

There is persuasive evidence that Liman was mailed and received the Class Action Notice as well as two copies of the Collective Action Notice. Additionally, there is uncontradicted evidence in the record that the Collective Action Notice was posted in a conspicuous location at Louie's for over two years while Liman worked there.[3] Finally, contrary to the argument advanced in Liman's brief, (ECF No. 121-1 at 3 n. 2.), Liman was, in fact, employed at Louie's when the Class Action Notice was sent and throughout the opt-out period. That fact further undermines Liman's claim that he did not learn of this litigation or the Class Settlement until March 2019. It is very unlikely that Liman—who was working at Louie's when the Class Action Notice was sent to the Class Members—never heard any other employees mention the Class Settlement.

Given all of the above, these factual assertions in Liman's affidavit, including his claim that he did not receive the Class Action Notice in 2017, are simply not credible. Because the Court does not credit Liman's claim that he did not receive the Class Action Notice in 2017, his excusable neglect argument collapses. Cf. Shumsker, 569 F. App'x at 19 (affirming district court's determination that party seeking to opt out of settlement failed to establish excusable neglect where her explanations "lack[ed] plausibility").

Liman maintains that the Collective Action Notices allegedly sent to him should not preclude him from opting out at this point. Liman points out that the Collective Action Notices—

---

[3] Liman has also not specifically contradicted the persuasive affidavit from Michael McGlynn, who recounts a conversation with Liman about this litigation. In any event, even without considering the McGlynn affidavit, the Court's conclusion would be the same.

which only concerned an opt-in collective action for FLSA claims—stated that if he chose not to join the lawsuit he would not be "affected by any ruling, judgment or settlement rendered in this lawsuit." (ECF No. 122-8.)  Liman also contends that this language in the Collective Action Notices should estop Defendants from relying on the Collective Action Notices in opposing his motion to opt out.

Liman's arguments are meritless.  Liman's affidavit does not assert that he reviewed this specific language in the Collective Action Notice and subsequently relied on it to his detriment.  Moreover, the Court is not relying on the Collective Action Notices to establish that those mailings gave Liman specific notice of the Class Settlement and the opt-out deadline set out in the Class Action Notice.  Rather, the Court is relying on the Collective Action Notices that were mailed to Liman and posted at Louie's because that evidence completely undermines Liman's credibility and his claims that he did not receive any of the three notices sent to him (including the Class Action Notice) and was completely unaware of this lawsuit prior to March 2019.

### 3. Liman's Claim of Excusable Neglect Also Fails on Other Grounds

Even if the Court were to credit Liman's claims that he did not receive the Collective Action Notices and Class Action Notices, the Court would still find that excusable neglect is absent here.  Even after Liman obtained counsel in December 2018, he did not act expeditiously to try to opt-out of the Class Settlement.

First, according to Liman's counsel, in December 2018, they began preparing to file a complaint in the Eastern District.  Liman's counsel, however, never state when they first learned of the instant lawsuit and the Class Settlement.  In screening Liman's case and preparing to file his wage-and-hour claims in this District, Liman's counsel—who are experienced employment attorneys—would undoubtedly investigate (through an ECF search or otherwise) whether any

12

other wage-and-hour suits had been brought against Louie's in this District. Liman's counsel was surely aware of the Class Settlement prior to speaking with defense counsel on March 12, 2019.[4]

Second, even assuming arguendo that Liman and his counsel first learned about the Class Settlement on March 12, 2019, Liman still fails to establish excusable neglect. After the March 12 communications with defense counsel, Liman waited almost two months to seek leave of the Court to file a motion to opt-out of the settlement. Liman's counsel also waited more than a month to respond to Louie's March 12 letter and only filed a request to opt-out on May 8 after Defendants took the initiative and filed their May 6 letter motion with the Court. Liman claims that this two-month delay should be excused because he was pursuing settlement discussions. The Court is not persuaded. Liman did not act diligently during this two-month period. Liman could have promptly filed a motion to opt-out shortly after March 12 and still pursued settlement discussions.

Considering all of the circumstances, Liman has not established excusable neglect. See In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig., 271 F. App'x 41, 43–44 (2d Cir. 2008) (affirming refusal to permit late opt-out where the party waited a month after learning of the opt out deadline to request exclusion); Hanks, 2020 WL 6538743, at *3 (finding no excusable neglect where party—who allegedly learned of opt-out deadline 46 days after its expiration—waited an additional five weeks to file an untimely opt-out request and an additional three months to seek leave from the court to file a belated opt-out request); Jackson v. SPS Techs., LLC, No.

---

[4] Liman asserts that he first learned of the instant lawsuit from his attorneys in "March 2019," but does not state that this occurred after the March 12 communications with defense counsel. Additionally, the points above not only undermine Liman's claim, but even assuming arguendo that Liman only learned about this lawsuit in "March 2019," it is doubtful that Liman's attorneys—who began preparing to file his complaint in December 2018—only learned about this lawsuit in March 2019.

13

CV 15-09854-AB (JCX), 2018 WL 4440804, at *3 (C.D. Cal. Sept. 4, 2018) (finding no excusable neglect where party attempted to object and opt out of settlement two months after deadline).[5]

Finally, Liman's excusable neglect argument also fails for an additional reason. Liman's May 8, 2019 affidavit indicates that, as of that date, "I wish to opt-out" of the settlement. (Liman Aff. ¶ 23.) However, even assuming arguendo that Liman did not receive the Class Action Notice in 2017, Liman has not established that he would have actually opted out upon receipt of the Class Action Notice in 2017 when the notices were mailed. Liman's affidavit never states that—if he had received the Class Action Notice in December 2017—he would have opted out of the settlement to pursue individual litigation at that time. This is the more relevant question—not whether he desired to opt out in May 2019. Moreover, the notion that Liman would have opted out of the settlement in December 2017 is belied by Liman's conduct. Despite being sent two Collective Action Notices and the Collective Action Notice being posted at Louie's, Liman never sought to opt-in to the collective action. Furthermore, Liman only complained to the Department of Labor about alleged unpaid overtime and sought to initiate litigation after his employment was terminated in September 2018. Given all the circumstances here, the Court cannot conclude that Liman would have opted out of the settlement if he had received the Class Action Notice in 2017.

Because Liman has not established excusable neglect, his motion to opt out is denied.

---

[5] Liman's reply brief cites, for the first time, a number of cases that he contends support his assertion of excusable neglect. Those cases do not persuade the Court that Liman has established excusable neglect here. See, e.g., In re Del-Val Fin. Corp. Sec. Litig., 154 F.R.D. 95, 97 (S.D.N.Y. 1994) (permitting late opt-out where pro se party, who was already engaged in an ongoing arbitration of her claims, received the class notice three weeks after the opt-out deadline and requested to opt out three months after receipt of the notice); In re Paine Webber Short Term U.S. Gov't Income Fund Sec. Litig., No. 94-CI]V-3820, 1995 WL 498805, at *2–4 (S.D.N.Y. Aug. 22, 1995), amended, No. 94-C-V-3820, 1995 WL 512703 (S.D.N.Y. Aug. 29, 1995) (accepting opt-out request that was submitted one day late and finding party's delay in not immediately filing a request to opt out late was excusable because litigation that was being pursued in state court may have mooted the issue).

B. **<u>Defendants' Motion Seeking to Enjoin Liman and Recover Attorney's Fees</u>**

Having denied Liman's motion to opt-out of the Class Settlement, the Court turns to Defendants' motion, which asks the Court to permanently enjoin Liman from pursuing any claims for unpaid wages that were resolved, waived, and released pursuant to the Settlement Agreement and the Court's September 27, 2018 Order.

Liman asserts that his FLSA claims are not precluded and seeks to pursue those claims in arbitration. (ECF No. 117; <u>see also</u> ECF No. 121 at 4 ("Mr. Liman intends to commence arbitration against Louie's pursuant to the parties' arbitration agreement.").) Liman maintains that this Court should hold that his FLSA claims are not precluded by the Class Settlement.

However, in light of the Arbitration Agreement between the parties, the Court declines to reach this question and denies Defendants' request for a permanent injunction precluding Liman from pursing his claims. Defendants may seek this relief in arbitration and/or raise their arguments concerning release and <u>res judicata</u> as defenses in the arbitration proceeding Liman seeks to bring.

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must . . . . demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." <u>Id.</u>

Because this Court's September 27, 2018 Order retained jurisdiction over this case and the Settlement Agreement, the Court has jurisdiction over Defendants' motion and could decide the

question of whether the Class Settlement and the September 27, 2018 Order preclude Liman's FLSA claims. The Court, however, did not retain "exclusive" jurisdiction over the Settlement Agreement and the parties have executed a broad Arbitration Agreement that covers virtually all "employment-related claims" between the parties. The issues raised by Defendants' motion can be litigated in arbitration. Defendants' motion seeks to enjoin a single Class Member from pursuing certain claims and the Court has decided, in its equitable discretion, to deny Defendants' motion and to allow these issues to instead be litigated in arbitration. Because Defendants can litigate these issues before the arbitrator, Defendants cannot establish they will suffer irreparable injury or that they have inadequate remedies at law. Moreover, litigating these issues in arbitration does not create a hardship on Defendants.

Accordingly, the Court denies Defendants' request for a permanent injunction precluding Plaintiff from pursuing his alleged claims.[6]

In Liman's most recent filings, he requests that the statute of limitations be equitably tolled for the time period during which these motions have been pending before the Court. The Court declines to rule on this request, which can be raised in arbitration.

Finally, Defendants' motion also requests attorney's fees pursuant to Section 4.1(I) of the Settlement Agreement. Although Defendants prevailed in opposing Liman's motion to opt out, that motion is not covered by this attorney's fees clause because that motion does not constitute a "new action." (Settlement Agreement § 4.1(I).) With respect to Defendants' motion to enjoin

---

[6] Liman's motion to opt-out of the Class Settlement is on a different procedural footing than Defendants' motion, which seeks to permanently enjoin Liman from pursuing his claims in arbitration. Liman's motion to opt out, which the Court denied on the merits, had to be brought in this Court. See Sierra v. City of New York, No. 20-CV-6159, 2021 WL 4443304, at *2 (S.D.N.Y. Sept. 28, 2021) ("[T]he Court is aware of no authority . . . demonstrating that a court has the power to grant a class member leave to opt-out of a class in a different action over which that court does not preside."). By contrast, Defendants' motion seeks equitable injunctive relief that could have been pursued in either this Court or in arbitration. Additionally, the issues raised by Defendants' motion can also be raised as defenses in any arbitration proceeding brought by Liman.

Liman, the Court has denied that motion and, as Liman points out, the fees provision is inapplicable to that motion because Liman has not yet filed a "new action" against Defendants.

### III. CONCLUSION

For the reasons stated above, the Court denies Liman's motion to opt out and Defendants' motion to enjoin Liman.

Dated:  March 4, 2022
Central Islip, New York

                                                  /s/ (JMA)
                                              JOAN M. AZRACK
                                              UNITED STATES DISTRICT JUDGE